### THE MEXICAN NATIONAL RAILROAD COMPANY V. JAMES MUSETTE.

#### No. 75.

1. **Unreasonable Requests of Appellee—Practice on Appeal.**—Where, on appeal, the appellee requests the appellate court to examine the evidence and dispose of the case on an issue of fact which was not submitted to the jury, and which was not a fact conceded, such request, if complied with, would be exceeding the authority conferred upon this Court of Appeals.

2. **Charge of the Court—Not Error, When.**—Where the court charged the jury, that "the defendant as a railroad company has no means to act except through its agents, and the act or negligence of an agent in the performance of his duties is in law the act or negligence of the company itself," and immediately follows this charge by instructing the jury, that the company would not be liable for the negligent acts of an employe if it had used ordinary and reasonable care and diligence in employing him, such charge when considered in connection with other portions of the charge would not be erroneous.

3. **Same—Is a Proper Charge, When.**—Where the court charges, that "if the plaintiff has shown that the defendant failed to use ordinary care and diligence in employing an engineer who is a careless and reckless man, and the injury complained of was occasioned as the direct and proximate result thereof, and the same happened without fault or contributory negligence on the part of the plaintiff, this, in law, would be such negligence on the part of defendant as would render the company liable, and you should find for the plaintiff," such charge embodies a correct proposition of the law.

4. **Same—Is Erroneous, When.**—A charge is distinctly erroneous which instructs the jury, that "an injury is the proximate result of an act, when, without said act, the

injury would not have occurred; if, therefore, you believe from the evidence that plaintiff's injuries are and were the direct proximate result of the act of the fireman, then you will find your verdict in favor of the defendant.''

5. **Evidence—Admissible, When—Not Hearsay.**—That a witness obtains his knowledge from telegraphic reports of the reckless running speed of trains, is not objectionable as hearsay evidence, in view of the fact that the objection was not made on the ground that the original reports would have been better evidence, but that the character of the evidence was hearsay, which would have applied equally to the original.

6. **Same—Hearsay Evidence Admissible, When.**—When a witness states that the character of an employe for care and caution is not good, as the superintendent and trainmaster said he had been discharged before by the company for carelessness, this is evidence of general reputation, which is always based on hearsay, and is admissible when sufficiently general.

7. **Liability of Master for Injuries to Servant.**—The master will not be held liable for the negligent acts of a fellow servant, unless such master has himself been negligent in having such servant in his employ; nor would he be liable even then, unless the negligent act was found to be the proximate cause of the injury.

8. **Proximate Cause—Intervening Agencies.**—An intervening agency, in order to make the original cause too remote, must be some new cause of itself sufficient to stand as the cause of the misfortune. It must be an independent agency. If the intervening cause has been produced by, or its presence attributable to, an ulterior cause, it does not take the place of the latter as the sole responsible cause.

9. **Excessive Verdict—What Is Not.**—A verdict for $11,200 is not excessive when given for injuries sustained through the negligence of the defendant company in employing a dangerous and unworthy fellow servant, when such injuries result in the amputation of one limb, and render the plaintiff unfit for hard labor.

10. **An Ordinary Jury—Must Possess What Capacity—Presumptions as to Capacity.**—A jury must be presumed to possess such capacity as will enable them to understand a charge that is expressed in ordinarily clear language. No principle of practice is better established than that the entire charge must be looked to, to determine its sufficiency.

APPEAL from Webb.

No briefs or record reached the Assistant Reporter.

JAMES, CHIEF JUSTICE.—*Conclusions of Fact.*—1. That plaintiff was conductor of a mixed freight and passenger train going from Toluca to the City of Mexico, in the Republic of Mexico. The railway ran over what was called the mountain, which was an ascent having a grade of forty per cent, i. e., four feet to the hundred, for a distance of about ten miles. The train was one of about nineteen cars, and was carrying at the time from 80 to 100 passengers, and to move it over the grade required the services of three engines. At the base of the mountain one engine was placed in front of the regular engine at the head of the train and one in the rear of the train, this being known as the pusher engine, one of the most powerful in the service, of which one Hobart was the engineer, and a Mexican the fireman, on the occasion of the

injury complained of. After the train had climbed the grade a distance of about eight miles, the helper engine (the one in front) became disabled by the breaking of the rod which connected it with the tender. The plaintiff, who was the conductor, on the stopping of the train, caused the brakes to be applied, and went forward and cut off the front engine, and sent them forward to the station called Zalazar, at the top of the grade, for assistance. About five minutes after this the engineer of the rear engine (Hobart) appeared at the head of the train where plaintiff was, having left his engine. Plaintiff said to him, that he must have a "damn sight of confidence in his fireman" to leave him alone on his engine on that grade, and ordered him back to his engine. Hobart's reply was that his engine was in as safe hands as plaintiff's train was. At that moment the train began moving backward, and the engine in the rear was observed to be working. Plaintiff immediately commenced doubling the brakes, passing from one car to the other in doing so, setting the brakes as tightly as possible. After doing this on several cars, as plaintiff was in the act of stepping from one car to another in continuing to do so, the coupling link broke where he was stepping, and the train parted, and plaintiff fell between the cars and broke his right leg above the ankle, which necessitated amputation, but managed by throwing his body to one side to escape further injury. At this time Hobart was behind plaintiff, and could not get to his engine because of a culvert in his way, which the train had passed over. At the time plaintiff was hurt the train was moving down at the rate of about six miles an hour.

2. The fireman on the pusher engine knew nothing of the working or mechanism of an engine, and it was some act of his during the absence of the engineer that caused the engine to become reversed. It was in evidence that on this grade great caution was necessary on the part of employes, and that the superintendent's orders to engineers, posted up at stations, prohibited engineers leaving their engines except at a station to receive orders.

3. It appeared that a brakeman who was in the caboose climbed over the engine into the engine room, and by reversing it and giving it steam stopped the train, after plaintiff was hurt and two passengers killed.

4. This occurred in December, 1888. It was shown, that in the latter part of 1887 Hobart had been discharged from the service of defendant for having by reckless running caused a wreck while one of its engineers. That during the first half of 1888 he was re-employed by the same company, and continued in its employ until this occurrence, and for a short time afterwards. There was evidence that he was at times reckless in the performance of his duties, and that the officers were informed of it.

5. It appears that it was a part of the conductor's duties to inspect couplings, brakes, etc., before leaving with trains, and as often when out as the train stops.  But there was no evidence that the breaking of the coupling in this instance was caused by any defect that plaintiff could have observed by inspection, but on the contrary it appears that at this time more than one coupling broke, caused by the extraordinary strain exerted on them.

6. That the then superintendent of the division, R. C. Peebles, personally made examination of the wreck and its cause, which resulted in the discharge of Hobart.  At the time of the re-employment of Hobart, one J. M. Winslow was master mechanic, and re-employed him with the consent of the then superintendent, Younge.  Winslow was master mechanic at the time of the former discharge.  It also appears, that upon the re-employment of Hobart, the train master (Cappock) protested against his being re-employed, and in order to inform the new superintendent, called attention to the former wreck caused by him, and to his general reputation.  That nothing was done, and Hobart was continued in the service as engineer until a short time after this accident.

7. The evidence was conflicting as to whether the trainmaster was a fellow servant of plaintiff.  The evidence of Daniel O'Connor was, that the master mechanic was the officer to whom it was the duty of the trainmaster to report the conduct of engineers.  The testimony of Cappock was, that the master mechanic employed them with consent of the superintendent, or trainmaster.  That the master mechanic could discharge them for incompetency as regards knowledge of machinery and care of same; but in respect to train rules and unskillful handling of trains and engines, the duty devolved on the trainmaster to discharge for incompetency and misconduct; but the action of both the master mechanic and trainmaster are subject to revision and reversal by the superintendent.  However, the court charged favorably to defendant, that they were fellow servants.

8. The evidence establishes the fact that the plaintiff and the engineer were fellow servants, and the jury were so charged.

9. The evidence was conflicting as to whether plaintiff knew or ought to have known of the engineer's unfitness.

10. We conclude, that the evidence of reckless conduct on the part of this engineer does not relate to a time subsequent to his re-employment; and furthermore we conclude, that the trainmaster protested against the re-employment of the engineer, giving his reasons, and that the same was unheeded, and he did nothing more in the matter.

11. That plaintiff at the time of his injury was 36 years of age, his business that of railroad conductor, earning from $150 to $165 per month; that he was afterwards able only to do light work, and unable to get employment as a conductor, and his earning capacity has been

diminished two-thirds of what it formerly had been. That he expended several hundred dollars for treatment as a result of the injury, and that he still suffered pain therefrom.

*Conclusions of Law.*—The negligence relied on is as follows:

1. In the use by appellant of a defective coupling link on its train.
2. The negligence of the engineer in leaving his engine.
3. The negligence of the company in having in its employ a dangerous and reckless engineer, knowing him to be such.

The court in dealing with this case treated the engineer and plaintiff as fellow servants, and so charged the jury, and held the evidence of negligence in respect to the coupling link and draft bar as not sufficient to go to the jury to show negligence on the part of the company, and so charged the jury, and the case was restricted on the question of the negligence of appellant in employing a known unsuitable engineer, together with the question of the negligence of the engineer and contributory negligence of plaintiff, in respect to the particular injury occasioned.

It is not necessary to consider the ruling in reference to the sufficiency of the testimony concerning the draft rod and the coupling link, for notwithstanding the court excluded these features from the case, the verdict was in favor of appellee. Appellee suggests, that if the jury could have found from the evidence that appellant did use a defective link unfit for its purpose, which appellant knew or ought to have known by ordinary diligence, and that appellee did not know of the defect and could not have known of it by the exercise of ordinary care, and that the latter received his injuries directly from such cause, the judgment ought to be affirmed, without reference to the errors assigned. In other words, that this court should examine the evidence and dispose of the case on an issue of fact which was not submitted to the jury, and which was not a fact conceded. This would be exceeding our authority.

The first of the errors assigned is, that the court charged the jury as follows: "The defendant as a railroad company has no means to act except through its agents, and the act or negligence of an agent in the performance of his duties is in law the act or negligence of the company itself." This charge, standing alone, would have encouraged the finding of a verdict for the negligence of a fellow servant. But immediately following upon this the court dispels any such effect, and the jury are distinctly instructed that the company would not be liable for the negligent act of the engineer if it had used ordinary and reasonable care and diligence in employing him. Considered in connection with other portions of the charge, the above clause is not subject to criticism.

The second assignment of error complains of the following charge: "If the plaintiff has shown that the defendant failed to use ordinary care and diligence in employing the engineer who operated said pusher locomotive as is required under the charge above given, that he was a careless and reckless man, and that the injury complained of was occasioned as the direct or proximate result thereof, and that the same happened without the fault or contributory negligence of the plaintiff as hereinafter charged, this in law would be such negligence on the part of defendant as would render the company liable, and you should find for the plaintiff. An injury is the proximate result of an act, when without the act the injury would not have been inflicted."

The charge embodies a correct proposition of law. The objections to it as stated are, that the jury were authorized by it to find for plaintiff if defendant was negligent in employing Hobart regardless of the remoteness of the negligent act of employment on the part of the company or its representatives. The answer to this objection is, that if there were facts in evidence rendering such explanation desirable, defendant should have requested a charge supplying it.

The third proposition under this assignment does not in any manner point out wherein the charge is not applicable to the facts, and we can not consider it. The third and fourth errors assigned are to the nineteenth paragraph of the court's general charge, and also to the twelfth paragraph. The charges were correct in law, and applicable to the evidence. They virtually instructed the jury, that to enable plaintiff to recover they must find that defendant was negligent in employing the engineer Hobart, and that he was careless and reckless, and thereby caused or contributed to the injury without fault on plaintiff's part, and that the question of negligence was altogether for them to determine. Other portions of the charges defined the law of proximate cause, and requires the recklessness of the engineer to have been the proximate cause of the injury to admit of a recovery.

Appellant's fifth assignment of error is not well taken. Many of its parts can not be considered, on account of not answering the requirement of being specific. The charges given by the court as a whole can not be said to have confused the issues, and the statement of the pleadings given in the beginning of the charges, though lengthy, was not upon the weight of evidence, and can not be taken to have interfered with the proper understanding by the jury of the issues.

The sixth assignment is on the ground that the court refused to direct a verdict for the defendant. It is clear that such instruction would not have been warranted.

The seventh error assigned is, that the court refused to give the following charge: "The jury are instructed, that an injury is the proximate result of an act, when without said act the injury would not have occurred; if therefore you believe from the evidence that plaint-

iff's injuries are and were the direct proximate result of the act of the fireman on pusher engine 21 in putting said engine in a backward motion, then you will find your verdict in favor of defendant." This charge would have been misleading, in view of the evidence. There could be no question that an act of the fireman was a cause that intervened between any act of the engineer and the injury, and that it was the immediate cause—assuming that it was the backward motion of the train that produced the injury. The effect of the charge would have been to banish any negligence of the engineer from the jury's consideration, and to lead to a verdict for defendant without regard to any ulterior negligent cause of the injury. The charge asked was distinctly erroneous. The ninth assignment has no merit, for the same reason.

It is further complained by the eighth assignment of error, that a charge asked by defendant should have been given which contains, in substance, the following matters: That if the jury believed from the evidence that at the time and for months previous to the injury L. D. Cappock was trainmaster or train dispatcher on this part of the road, and that as such it was his duty to report acts contrary to rules to the master mechanic, and if the jury believed that Cappock knew that Hobart had been in the habit of violating the rules anterior to the accident, and failed to report same to the master mechanic, then the retention of said Hobart was the neglect of Cappock, a fellow servant, and plaintiff could not recover.

This charge was also not applicable to the evidence. It appears that at the time of Hobart's re-employment one Winslow was the master mechanic who, jointly with the superintendent, re-employed him, the same Winslow who was master mechanic at the time of his previous discharge for negligently causing a wreck. Afterwards another took his place as master mechanic, to whom it seems the trainmaster made reports of misconduct of the engineer. The charge if given would have made the decision turn on the fact of whether or not the trainmaster had reported such acts to the master mechanic. There was evidence upon which the jury could properly conclude that the absence of such reports concerning this engineer after the re-employment was not negligence on the part of the trainmaster, because at the time of the re-employment he had called the attention of the company's officers to the unfitness of this engineer, and protested against his employment, and that such protest was disregarded. It was not negligence on his part to refrain from repeating his protest, and there was evidence that what knowledge the trainmaster had on this subject was in the possession of the officers of the road, and besides, there may have been nothing in Hobart's character to report after the re-employment.

It is clear to our mind, that the engineer's conduct prior to his reappointment was sufficient of itself to justify the finding that he was an unfit person for the position of engineer, and the company certainly knew of this conduct, for it had through its superintendent discharged him for that reason. The charge asked would have led the jury to disregard all this testimony. It is also clear to our mind, that had the retention of Hobart been due to the trainmaster's neglect, and that they were fellow servants, there is evidence to show the company possessed what information the trainmaster had, and the negligence of the fellow servant and that of the master would have been concurrent, and the negligence of the servant would in such case be no defense. The charge was properly refused.

As to the tenth assignment, which involves a charge asked by defendant and refused, we find on examination that all that is meritorious in this was substantially given in other charges. The charge is based mainly on the contingency of a finding that the defendant had established or exercised reasonable care and foresight in providing rules and regulations, calculated, if carried out, to afford employes a reasonable degree of safety against negligent and reckless acts of co-employes. The evidence did not involve such matter, and the record discloses no state of facts which would render the charge appropriate, and the entire formation of the charge is such as would have obscured the issues in the case.

By the eleventh assignment of error appellant questions the ruling of the court in allowing to be read the answers of L. D. Cappock to direct interrogatories numbers 10 and 12.

The answer to interrogatory 10 is here given: "At the time of Hobart's employment I did know of Hobart's general character for care and caution. My source of knowledge was my having had the same general supervision of trainmen and engineers, and also from having been conductor on the Southern Division of the Mexican National Railroad during Hobart's previous employment as locomotive engineer on the southern part of the Mexican National Railroad; his general reputation for care and caution at the time of his employment was very bad."

The answer to interrogatory 12 is as follows: "I do know that the officers of the defendant railroad company who employ and discharge the engineers knew at the time Hobart was employed his general character and reputation for care and caution. I know that the defendant railroad company knew the character and general reputation of Hobart, because I officially gave them notice and objected to his being employed. They knew of his previous work on the Mexican National Railroad, I having made them well acquainted with the facts of his having at one time previous been discharged from the service of the Mexican

National Railroad for careless and reckless running, causing the wreck of a freight train.''

The assignment refers to bill of exceptions number 1 for the reasons on which it is based. This bill of exceptions states the reasons to be, that said answers are based upon knowledge derived from others and from telegraphic reports, and it is hearsay and inadmissible, as shown by the said answers themselves and from the witness' answer to the eleventh cross-interrogatory, in which he says: ''I have stated from my own personal knowledge what I have said about protests being made, and the action of Hobart in scoffing when spoken to by us regarding obedience to rules and orders. The statements I have made regarding excess of speed are telegraphic records. The statements regarding the guilt of engineer Hobart in wrecking a freight train and his discharge for the same are made on the official report of the superintendent. My statements regarding the character and reputation of engineer Hobart are based on official reports of conductors and train dispatchers. All the official reports were left by me in the trainmaster's office in the City of Mexico. My statements regarding the accident in which Musette was injured are based upon the report which was made to me of the accident, and which was also left in the trainmaster's office in the City of Mexico.'' Another reason for objecting to such charges is stated in the bill of exceptions to be, that they are immaterial and irrelevant to any issue made in the pleadings, it being immaterial what the character of Hobart was at the date of his employment at a remote period, the character of Hobart at the time of and immediately preceding the accident being the true criterion.

It is plain that we have to pass only upon the objections stated. No objection is made because no notice had been given defendant to produce the original of the records. There is nothing in these particular answers obnoxious to the exceptions raised. The witness qualified himself to give evidence concerning the general reputation of Hobart for care and caution, having had supervisory and personal relations as to him in his employment upon the same division, which placed him in a position to know his reputation. He knew this reputation from official reports and notices that came into his possession. The witness states in these answers, that the officers of the railroad company who employed and discharged engineers knew Hobart's general reputation for care and caution. This he states of his own knowledge, because, as he states, he had officially given them such notice and objected to Hobart's employment, and that he had made them acquainted with the fact of his having at one time previous been discharged from the service of the company for careless and reckless running, causing a wreck. That he obtained his knowledge of such reckless running speed from telegraphic reports is no objection to the answer, in view of the fact that the objection was not made on the ground that the

original reports would have been better evidence, but that the character of the evidence was hearsay, which would have applied equally to the originals. Besides, the witness appears to have been informed of the reckless running which occasioned the discharge of Hobart from the report of the superintendent himself. The testimony was not immaterial or irrelevant, as charged.

This assignment also questions the witness Cappock's answer to the seventeenth direct interrogatory, referring to the bill of exceptions number 2. For the reasons above given in connection with the answer to interrogatory 12, this answer to the seventeenth interrogatory is not subject to the objections mentioned.

The twelfth assignment is directed to the answer of witness Warren, who stated that the character of this engineer for care and caution was not good, as the trainmaster and superintendent said he had been discharged before by the company for carelessness. It is claimed that this was hearsay. Evidence of general reputation is always based on hearsay. This particular testimony may not have been of a character sufficiently general, but it was not on that ground that it was objected to. If that had been made a ground the court might have sustained it, although it may have been competent to go in as admissions, for the superintendent was clearly shown to have been vice-principal, and the evidence is conflicting as to whether the trainmaster was.

This disposes of the assignments, except the general one, that the court erred in overruling the motion for new trial, and that the verdict was excessive.

So far from being against the evidence, we are of the opinion that the verdict is amply sustained by the evidence showing that the abandonment by the engineer of his engine at a critical time was the efficient cause of the plaintiff's injury.

The disabling of the front engine contributed nothing to the injury, as it had been separated from the train and sent in, and the train secured for several minutes before the rear engine begun to draw it down the grade. The evidence did not permit this to be taken as a factor in the case.

The evidence was not sufficient, as we understand it, to have justified a finding that the coupling which came apart below plaintiff's feet as he stepped from one car to the other was the result of negligence in the defendant, or that plaintiff was guilty of contributory negligence in not having detected it, but the charge submitted the issue of contributory negligence, and the jury is presumed to have passed on this.

The evidence of Fierrs, a witness for defendant, showed the fact to be that the train was already made up when delivered to the conductor, and this interfered with a thorough examination of the couplings by him, and that to do this properly would have required the uncoupling

of the entire train; and the testimony of this witness makes it reasonably certain that the breaking of the coupling was not due to any defect in this particular coupling, for other couplings were severed at the same time, and he states that there was a powerful strain put on them. It is evident from the evidence that the care exacted of the conductor in examining the parts of the train under his control would not probably have revealed the defect, if any, in this coupling.

In tracing the cause of this injury, all the evidence concentrates upon the backward movement of the pusher engine.

From a survey of the situation, the mind instantly perceives the importance, in such an emergency as this train was found in, of the rear engine, and the importance of the engineer being at his post. The act of the company in causing one of the most powerful of its engines to be placed in the rear of trains passing over this mountain grade makes this manifest. The jury could well conclude, from the facts and circumstances, that the act of the engineer in leaving the engine at that time in the hands of a person ignorant of the management of an engine was an act of negligence. There was also evidence to authorize a conclusion that he was a negligent and reckless person. Still the company would not be answerable for his negligence unless it had itself been negligent in having him in its employ. Nor would the defendant be held even then, unless the negligence was found to be the proximate cause of the injury to plaintiff.

We will consider first the question of proximate cause. Appellant contends, that as the act of the fireman was the cause that directly and immediately preceded the accident, it was the proximate cause, and a cause for which defendant could not be held responsible. This position is not sustained by authority. An intervening agency, in order to make the original cause too remote, must be some new cause of itself sufficient to stand as the cause of the misfortune. It must be an independent agency. If the intervening cause has been produced by, or its presence attributable to, an ulterior cause, it does not take the place of the latter as the sole responsible cause. This is sustained by authorities in this State. Brandon v. Manufacturing Co., 51 Texas, 121; Seale v. Railway, 65 Texas, 278.

The act of the fireman, had it happened at all, would have been harmless had the engineer been present at his post; therefore it may be said that the reversed movement of the engine and the injury to the defendant were alike the results of his absence.

As to the engineer's unfitness for this responsible position, involving as it did the safety of employes and passengers, the testimony was sufficient.

It appears that for recklessness resulting in the wrecking of a train he had been discharged one year before; that a few months afterwards the company re-employed him, and there is nothing to indicate

what reasons the company had for rehabilitating him consistently with care on its part, if any, and it may be that these facts, which are not contradicted, would conclusively show not only that the engineer was a reckless person, and that the company had knowledge of the fact, but also that it had not exercised the proper care in again employing and retaining him in the same position; but we do not hold this, and it is not necessary that we should. There was other evidence to show his unfitness, and the company's knowledge thereof. This matter was fully submitted to and determined by the jury.

The testimony of Cappock concerning the engineer's reputation is not distinctly confined to a time at or just preceding the accident. It appears to relate to the one year and a half he had known the latter. Still, his general reputation for unfitness at any time during his employment would have been admissible.

The testimony of Cappock showed defendant knew of the unfitness of the engineer prior to the accident, and had employed and retained him with such knowledge and against his protest. The retention of the engineer under said circumstances was therefore the act of defendant.

There was some evidence going to show that it was the duty of the trainmaster to make reports to the master mechanic, and that the master mechanic who succeeded Winslow had received no reports derogatory to the engineer. Therefore it is argued that the trainmaster, Cappock, a fellow servant, had failed in his duty to report the misconduct of the engineer. As before stated, there may have been no misconduct to report during that particular period, and his general reputation seems to have been already made known to the defendant. Besides, if there had been misconduct on the part of the engineer during said period, there exists a conflict in the evidence as to it being his duty to make reports to the master mechanic. This would certainly not be conclusive evidence of neglect on the part of the trainmaster, as a cause leading to plaintiff's injury.

We are not altogether satisfied that by the evidence the trainmaster and plaintiff were clearly shown to have been fellow servants, but the court, at the request of defendant, charged the jury distinctly that they were, and this was favorable to defendant. The jury had this issue before them in a charge asked by defendant, and have determined it. We find nothing which in our judgment should lead to a reversal of the judgment.

The verdict for $11,200 is not excessive. Railway v. Cooper, 2 Texas Civil Appeals, 42, in which a writ of error was refused.

The judgment is affirmed.

*Affirmed.*

Delivered December 6, 1893.

Affirmed on writ of error by the Supreme Court.

### ON MOTION FOR REHEARING.

JAMES, CHIEF JUSTICE.—Appellant, in its motion for rehearing, insists that the question whether or not there was a negligent act committed by the engineer Hobart was virtually withdrawn from the jury by the charges given, and the jury thereby allowed to find the defendant liable simply from the fact that he was an unfit employe, and that defendant had him in its employ, knowing this. Appellant contends that thus the vital issue was not submitted, but that the case was submitted and determined on a collateral issue, as above indicated.

An inspection of the record shows this position to be a mistaken one.

That portion of the charge of the court set forth literally in the beginning of the motion for rehearing, and which is questioned as not requiring the jury, before finding for plaintiff, to find that his injury resulted from the negligence of the engineer Hobart, does in our opinion make such a finding a condition to plaintiff's recovery. The language of the charge is as follows: "If the plaintiff has shown that the defendant failed to use ordinary care and diligence in employing the engineer (Hobart) who operated the pusher locomotive, as is required under the above instructions given, and that he was a careless and reckless man, *and that the injury complained of was occasioned as the direct or proximate cause thereof,*" etc.

How the plaintiff could have sustained an injury through the reckless or careless disposition of the engineer except through some act of carelessness or recklessness on his part, we can not imagine.

The final and nineteenth clause of the court's main charge is as follows: "It is for you to determine from all the evidence before you what was the proximate cause of the injury complained of; but unless you find that the defendant was negligent in employing the engineer Hobart, and that he was careless and reckless, *and thereby caused or contributed to the injury complained of,* without any fault on the part of the plaintiff, then you will find for the defendant."

We believe it can not be seriously asserted that the case thus submitted was submitted on the issue of whether or not the engineer, being a reckless person, the defendant knew to have been such. This issue is denominated a mere collateral issue in the case. It was as important and as necessary an issue, leading up to defendant's liability, as the particular act of the engineer from which the injury was claimed to have resulted. It would have been as fatal to the judgment for the court to omit one of the issues as the other, but we would not be justified in reversing the judgment simply because one of these issues may have been presented somewhat more distinctly than the other. A jury must be presumed to possess that much capacity as will enable them to understand a charge that is expressed in ordinary

clear language. No principle of practice is better established than that the entire charge should be looked to, to determine its sufficiency. Great stress is laid upon a special charge given by the court, which reads as follows: "The jury are instructed that the engineer Hobart, Paterson and Chapman, the brakeman and fireman, and L. D. Cappock, trainmaster or train dispatcher, all and each of them were fellow servants of conductor James Musette, the plaintiff, and any injury suffered by the plaintiff through want of care or negligence on the part of any of said coservants was such injury as was incident to the service of plaintiff as conductor, and for which he can not recover."

This special charge appellant says excluded from the consideration of the jury the negligence of the engineer Hobart in leaving his engine at a moment of peril, the vital point in the case.

As we have already seen, this question had been in fact submitted in the main charge, and we are at a loss to understand what effect the above special charge could have unfavorable to the defendant. It was misleading only in favor of defendant, and it must be borne in mind that it was prepared and asked by defendant. If it tended to make more prominent the issue as to the engineer being a known unsuitable employe, and less prominent the issue as to the particular act of negligence, the defendant ought not to be heard to complain. We are led to believe, from defendant having requested this charge in this form, that it did not upon the trial lay much stress on the issue of the negligent act of the engineer. Moreover, the point here relied on was not raised in the District Court, as a reading of the motion for new trial will show. It ought not be given any effect here under these circumstances, even if it would under other conditions have had the effect ascribed to it, which we do not believe was the case.

We see nothing in what is advanced to require us to recede from our views as to the act of the engineer in abandoning his engine being taken as the proximate cause of the misfortune to plaintiff.

The tenth ground presented in the motion proceeds upon the idea that under the charges the jury were allowed to consider plaintiff's loss of time and mental suffering, which appellant claims were not claimed as matters of damage in plaintiff's pleadings. The charge given authorized a recovery by plaintiff for such sum as would compensate him for his injury, and the court's language is: "And in this connection the jury may take into consideration the loss of time, if any, to cure him of such injury, the extent and duration of such injury, and the impaired ability, if any, of the plaintiff to earn money caused by the injury, and he will be entitled to such damages as will simply compensate him, if you find him entitled to recover." The items mentioned are embraced in the allegations of the petition, and nothing appears anywhere as to mental suffering. And this question was not raised below, nor in the briefs in this court.

The other matters relied on for a rehearing we do not regard as well founded, and they are sufficiently discussed in the opinion already delivered.   For these reasons the motion will be overruled.

*Motion overruled.*