## MISSOURI, K. & T. RY. CO. OF TEXAS v. LINTON.

(Court of Civil Appeals' of Texas. Austin. Nov. 1, 1911. Rehearing Denied Nov. 22, 1911.)

1. DAMAGES (§ 178*) — EVIDENCE (§ 127*)—BREACH OF CONTRACT.

In an action against a railway company for breach of contract to carry the dead body of plaintiff's son, plaintiff's daughters were properly permitted to testify that, after hearing that the remains had not been shipped, plaintiff did not sleep nor seem to remember anything, and to testify to her declarations 'as to her feelings.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 472; Dec. Dig. § 178;* Evidence, Dec. Dig. § 127.*]

2. DAMAGES (§ 178*)—PHYSICAL AND MENTAL SUFFERING—EVIDENCE.

The extent of one's physical and mental suffering can be shown by the statement of any facts manifesting the same, and coming under witness' observation.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 472; Dec. Dig. § 178.*]

3. EVIDENCE (§ 478*)—OPINION EVIDENCE—MENTAL STATUS.

One's mental status may be shown by nonprofessional testimony, based on acquaintance with and observation of his conduct and appearance.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2242–2244; Dec. Dig. § 478.*]

4. CARRIERS (§ 69*)—BREACH OF CONTRACT—PLEADING—VARIANCE.

In an action against a railway company for breach of contract to carry a dead body, any variance between allegation that the company agreed to ship the remains within a reasonable time, to wit, five days, and plaintiff's testimony that defendant's agent told her that the remains would be delivered within four days was immaterial, where she testified repeatedly that the agent promised delivery in five days, including the day the contract was made, and where the remains were never shipped by defendant.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 69.*]

5. DAMAGES (§ 218*)—BREACH OF CONTRACT—ACTION—DAMAGES—INSTRUCTIONS.

In an action against a railway company for breach of contract to carry a dead body, an instruction that plaintiff could recover the amount she was compelled to pay an express company in excess of the amount agreed upon with defendant, that she could recover only for injuries suffered between the time she learned of the breach and when she first ascertained that the remains had been in fact shipped, including injury to her health and mental anguish, but that she could not recover for any injuries or suffering caused by decedent's death, was not erroneous, as failing to limit recovery to such damages as were reasonably within contemplation of the parties, in the absence of request for a special charge.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 218.*]

6. TRIAL (§§ 251, 252*)—CARRIERS (§ 64*)—DEAD BODIES—CONTRACT TO CARRY—ACTION FOR BREACH — INSTRUCTIONS — APPLICABILITY TO PLEADINGS AND EVIDENCE.

In an action against a railway for breach of contract to carry a dead body, an instruction that, if the body would not in any event have been shipped without provision for an attendant to accompany it, and plaintiff knew thereof and did not make any arrangements for an attendant, she could not recover was properly refused, where there was no pleading that failure to ship was due to such failure of plaintiff, and there was no evidence that the contract required her to furnish return transportation for the attendant, and since the instruction would require finding for the company, regardless of whether it contracted to ship the body before plaintiff knew that an attendant would be required.

[Ed. Note.—For other cases, see Trial, Dec. Dig. §§ 251, 252;* Carriers, Dec. Dig. § 64.*]

7. ESTOPPEL (§ 110*)—PLEADING—NECESSITY.

Estoppel must be pleaded.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 300; Dec. Dig. § 110.*]

8. CARRIERS (§ 68*) — CONTRACT — MODIFICATION.

Obligations under a contract to carry a dead body are not controlled by recitals of a receipt, given by the carrier's agent, executed after the contract was made, and intended merely as a receipt for money paid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 148, 194, 207–209, 216; Dec. Dig. § 68.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by Adeline Linton against Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 126 S. W. 678.

Coke, Miller & Coke and Ramsey & Odell, for appellant. O. T. Plummer and S. C. Padelford, for appellee.

RICE, J. Appellee's son, Joseph Linton, was accidentally killed near Colfax, Wash., in January, 1906, of which fact she was apprised by wire on the 19th of said month, stating that his body had been embalmed and was ready for shipment. She, on Monday following the receipt of this information, contracted with appellant company, through its agent at Cleburne, to ship said remains within a reasonable time, to wit, within five days, to her for burial at her residence near Keene, Tex.; but this contract on the part of the company, as she alleged, was breached, whereby she was compelled to make other arrangements with the express company, which was thereafter done at an additional expense. She brought this suit to recover damages for said amount, as well as for physical pain and mental anguish sustained thereby.

After a general denial, appellant resisted recovery on the ground that no contract was entered into by it, whereby said remains would be shipped in any specified time, or by any certain route, and that the contract declared upon was without the scope of authority of such agent; and, further, that if any delay, as claimed, occurred, the same was due to the failure of appellee to provide return transportation for an attendant to accompany said remains, without which it could not be shipped, under the rules and regulations prescribed by appellant and other lines with which it connected. There was a jury trial, resulting in a verdict and judgment for the plaintiff, from which this appeal is prosecuted. This is the third appeal of this case. The two former appeals were determined by the Dallas Court of Civil Appeals, and will be found reported in 109 S. W. 942, and 126 S. W. 678, to which reference is made for a fuller statement of the pleadings and evidence.

[1, 2] The first two assignments complain of the action of the court in permitting the witnesses Misses Minnie and Julia Linton, daughters of appellee, to testify, over objection of appellant, that their mother, after receiving information that the remains of her son had not been shipped, did not sleep at all at night, did not have any memory, did not seem to remember anything, and to testify as to her declarations expressive of her feelings, stating, among other things, that she felt like her heart would burst, and that she could not live. It is contended on the part of appellant that the questions eliciting these answers were leading and suggestive, assuming the disappointment of their mother on account of the failure of the shipment of her son's remains, and for the further reason that the witnesses were not shown to be experts or judges of mental troubles or distresses, and were not competent to give an opinion, and any statement by them would be mere conclusions; and, further, for the reason that said witnesses could not know and distinguish between the natural grief of their mother for the loss of her son, for which there could be no recovery, and the disappointment which she might feel from a few days delay in getting the remains of her son. The questions propounded were not, in our judgment, leading; and, if it be admitted that they assumed such disappointment, this fact had already been established by her testimony. It is always competent to prove the extent of physical and mental suffering by the statement of any facts manifesting the same, which come under the observation of the witness. See 1 Greenl. Ev. p. —; M., K. & T. Ry. Co. v. Linton, 109 S. W. 942; s. c., 126 S. W. 678; Telegraph Co. v. Cooper, 75 Tex. 535, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; St. L. S. W. Ry. Co. v. Martin, 26 Tex. Civ. App. 231, 63 S. W. 1089; H. & T. C. R. R. Co. v. Shafer, 54 Tex. 641; G., C. & S. F. Ry. Co. v. Rose, 11 Tex. Civ. App. 201, 32 S. W. 730; Amer. & Eng. Ency. Law (2d Ed.) vol. 24, p. 267, and notes.

[3] The mental status of a person may also be established by the testimony of nonprofessional witnesses, derived from their acquaintance with and observation of the conduct, appearance, and actions of the party inquired about. This rule is well settled in this state. See Webb v. State, 5 Tex. App. 608, and cases there cited; Leache v. State, 22 Tex. App. 279; 3 S. W. 539, 58 Am. Rep. 638. These young ladies were constantly with their mother during the time inquired about, and it was proper to allow them, not only to state the facts, acts, and circumstances which indicated to them her mental status, but it was likewise competent for them to express their opinion relative thereto, for which reason these assignments are overruled.

[4] Appellant claims that there was a variance between the allegation and proof in this: That it was alleged that the defendant agreed to ship the remains within a reasonable time, to wit, five days, and that the plaintiff was permitted to and did testify that the agent told her that the remains would be brought to Keene within four days. An inspection of the record discloses that, while the plaintiff did state that the agent told her that the remains would be there in four days, she repeatedly testified that he agreed to ship them there by Friday night, which would make five days, including the

day the contract was made. We do not think the variance in this respect, if any, was material. Besides this, it is not contended on the part of appellant that it complied with the contract; but, on the contrary, it is abundantly shown that it did not ship the remains at all.

There is no merit in the fourth and fifth assignments, wherein it is complained that the count submitted the issue of permanent injury. An inspection of the charge complained of shows that no such issue was submitted.

[5] It is urged that the court erred in the third paragraph of its charge to the jury, treating of the measure of damages, on the ground that it failed to limit the recovery to such damages as were reasonably within the contemplation of the parties as the natural and probable result of the delay in the shipment of her son's remains. An inspection of this paragraph shows that the jury were told that in case they should find for the plaintiff they would assess her damages at the actual amount she was compelled to pay the express company in excess of that she had contracted to pay appellant, and, in addition, told them that if they allowed her damages for injuries suffered they would only allow her such as they might find from the evidence she may have suffered, and which were embraced in the interval of time occurring between the time she learned that said contract was breached by the defendant and the time when she first ascertained that the remains of her son had been in fact shipped, which injuries, if any, proximately resulted therefrom, including injury to her health, as well as mental anxiety, but expressly forbade them to allow her any damages for any injuries or suffering occasioned by reason of the death of her son. This charge was sufficient, we think, in the absence of a special charge covering the point complained of. If plaintiff desired the incorporation of this feature, it was its duty to have presented a special charge covering this phase of the case, for which reason this assignment is overruled.

[6, 7] There was no error, we think, in refusing to give special charge No. 15, which in effect told the jury that if they should believe that the remains of plaintiff's son would not in any event have been shipped and delivered to plaintiff at Keene, unless provision was made for an attendant to accompany said remains, and they should believe from the evidence that at the time said contract, if any, was made by the defendant with the plaintiff that she knew that said remains would not be shipped without an attendant, and that she did not make any arrangements for nor provide an attendant to accompany said remains, then, and in that event, they were instructed that plaintiff could not recover, and their verdict should be for the defendant. This charge, we think, was properly refused: (1) Because there was no pleading that the failure to ship the remains was due to the failure of plaintiff to furnish transportation for an attendant, but only on account of the failure to furnish return transportation for such attendant to accompany said remains. (2) Because there was no evidence of any contract between her and defendant, requiring her to furnish return transportation for such attendant. The witness Conger testified in behalf of defendant, among other things, that he did not know that the failure to ship was owing to the fact that no return transportation was furnished until several days after the making of the contract, of which fact he thereafter apprised plaintiff. (3) This charge also required a finding for defendant, if plaintiff knew of the fact that said company would not ship said remains without being accompanied by an attendant, and failed to furnish one, irrespective of whether the company had previously contracted with her to ship said remains or not, for which reason it was not error to refuse it. She might have relied upon her contract, notwithstanding she might have known defendant would not have complied with it. This latter feature of the defense was not in fact pleaded, without which it could not be relied upon. The fact, if true, was in the nature of an estoppel, and under our law an estoppel must always be pleaded. See Texas Banking & Insurance Co. v. Hutchins, 53 Tex. 61, 37 Am. Rep. 750; Scarbrough v. Alcorn, 74 Tex. 360, 12 S. W. 72.

[8] It is contended by the ninth assignment that the court erred in not granting a new trial, for the reason that appellant only contracted, as shown by its receipt, to furnish D. Crawford with two first-class tickets from Colfax, Wash., to Keene, which the evidence showed it did in fact do. It is true that the receipt mentioned did recite that the company had received from appellee the money mentioned therein for two first-class tickets; but it clearly appears from all the evidence that this receipt did not evidence the contract between the parties, and was executed some time after the agreement was made, and was only intended as a receipt for the money. The assignment presenting this question is therefore overruled.

The other assignments, after due consideration, are regarded by us as without merit, and are overruled.

Finding no error in the judgment of the court, the same is affirmed.

Affirmed.