PECOS & N. T. RY. CO. et al. v. BROOKS.

(Court of Civil Appeals of Texas. Amarillo. Jan. 13, 1912. Rehearing Denied Feb. 24, 1912.)

1. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.

When a carrier did not complain of the verdict against it for damages for delay in transporting live stock, the error, if any, in admitting evidence as to time, is not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

2. EVIDENCE (§ 317*)—HEARSAY EVIDENCE.

Where the evidence showed that cattle arrived at the point of destination at 6:50 a. m., and the person accompanying the stock testified that he turned the same over to a commission merchant about 8 o'clock a. m., and saw the stock in the pens of the commission merchant at about noon, the testimony of a salesman of the commission merchant as to the condition of the stock at the time of its arrival, accompanied by his statement that he first saw the stock about 8 o'clock at the sale pens of the commission merchant, was not objectionable as hearsay, it being probable that the stock remained on the car when the salesman first saw it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

3. EVIDENCE (§ 317*)—HEARSAY EVIDENCE.

Where the testimony of a witness testifying to the condition of live stock at the point of destination might have been based on information binding the carrier charged with negligence in transporting the stock, the testimony was not objectionable as hearsay though the witness could not testify from his own personal observation.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

4. DEPOSITIONS (§ 110*)—EVIDENCE—OBJECTIONS.

Where a witness testified by deposition and a written objection to an entire interrogatory, and the answer thereto did not point out what part was objected to, and the greater part of the answer was admissible as a statement of facts within the personal knowledge of the witness, the objection was properly overruled.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 323–328½; Dec. Dig. § 110.*]

**5. EVIDENCE (§ 537*)—EXPERT TESTIMONY—COMPETENCY OF WITNESSES.**

A person with 10 years' experience in selling stock at a market, and with 15 years' experience in handling and dealing with cattle generally in different capacities at the market, is competent to testify that a shipment of cattle was not in good condition when he saw them, and that the cattle were jaded and looked as if they had been on cars an excessive length of time.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2345, 2346; Dec. Dig. § 537.*]

**6. CARRIERS (§ 218*)—CONTRACT OF CARRIAGE—VALIDITY.**

A stipulation in a contract for the transportation of live stock that the shipper will load, feed, and water the stock and unload and reload at feeding and transfer points, and will care for the stock while in cars and will relieve the carrier from liability for any loss while in his charge, is void as against public policy because limiting the carrier's common-law liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. § 218.*]

**7. CARRIERS (§ 228*)—TRANSPORTATION OF LIVE STOCK—ACTIONS FOR INJURIES—BURDEN OF PROOF.**

A carrier of cattle has the burden of proving that a loss of cattle was not caused by its negligence, though the shipper accompanied the cattle.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

Appeal from Swisher County Court; W. F. Hendrix, Judge.

Action by E. Brooks against the Pecos & Northern Texas Railway Company and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Madden, Trulove & Kimbrough, F. M. Ryburn, and Terry, Cavin & Mills, for appellants. Martin & Zimmermann, for appellee.

PRESLER, J. This suit originated in the justice court, precinct No. 1, Swisher county, Tex., and was brought by appellee, E. Brooks, against appellants, the Pecos & Northern Texas Railway Company, the Southern Kansas Railway Company of Texas, and the Atchison, Topeka & Santa Fé Railway Company, to recover $185 damages on a shipment of 69 head of cattle from Tulia, Tex., to Kansas City, Mo., on October 22, 1909, on account of rough handling and delays en route, and the loss of nine head of cattle. Plaintiff recovered judgment in said court for the amount of $185, with interest from October 25, 1909, from which judgment appellants appealed to the county court, wherein on January 7, 1911, appellee recovered judgment against all the appellants for the sum of $142. From this judgment appellants duly appealed to this court and seek to have this cause reversed and remanded upon the errors assigned and hereinafter discussed.

[1-3] Appellants, under their first, second, third, and fourth assignments, complain of the admission in evidence, over their objec-tion, of the testimony of the witness Art Little, the salesman of the Lee Commission Company, who sold appellee's cattle, to the following effect: (1) That "these cattle arrived at the stockyards' unloading chutes at 6:50 a. m.;" (2) that "these cattle arrived·at the stockyards in car No. 53435;" (3) that "there were 15 head of grown cattle and 45 head of calves unloaded from said car at the Kansas City stockyards;" (4) that "the sale of these 60 head of cattle by the Lee Livestock Commission Company included all the cattle in this shipment that reached Kansas City." Appellants' grounds of objection being that upon the preceding statement of the witness the evidence complained of appeared to be hearsay and not based upon facts within his knowledge, the witness having previously testified that he "first saw these cattle around 8 o'clock a. m. at the sale pens of the Lee Livestock Commission Company." From which, together with the further evidence that the cattle arrived at 6:50 a. m., appellant infers and argues that the witness did not see the cattle until after they were unloaded, and was not "qualified" to give the testimony objected to. The witness not having testified as to the time of the actual unloading, we are unable to agree with appellants' contention that the evidence was thus shown to be hearsay, and that the witness was thus shown to have been permitted to testify about matters of which he could not have had such knowledge as would render him a competent witness.

It further appears to us from the testimony of the witness Campbell that it was quite probable that the cattle were not unloaded before "around 8 a. m. o'clock" or later, and that they were still on the car when witness first saw them, and that he was qualified from his own observation and knowledge to give the testimony objected to except as to the cattle having arrived at the stockyard unloading chutes at 6:50 a. m., October 25, 1909, which event appears to antedate witness' first arrival on the scene by about one hour and ten minutes, but as appellants on this appeal are not complaining of the verdict assessing damages for delay, and allege error only as to the recovery of the value of the nine head of calves lost, we are unable to see how this evidence as to time, even if held error, becomes material or that appellants were in any way injured thereby. The witness Campbell testified in part as follows: That he accompanied these cattle to Kansas City; that they were consigned to himself at Kansas City, and that when he got there he turned them over to the Lee Livestock Commission Company about 8 o'clock on the morning of the 25th; that he got into Argentine about 4 or 5 o'clock and took a street car on into Kansas City; got his breakfast, and came down and turned the cattle over to the Lee Livestock

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Commission Company about 8 o'clock a. m., October 25th; that he went back up town and got his dinner and came back down about noon and the cattle were in the pens of the Livestock Commission Company; that they had just been put in the pens of the Commission Company.

From this testimony it would appear that the cattle were not unloaded at "around 8 o'clock a. m.," when the witness Little says he first saw them, but were yet on the cars. Appellants, by their propositions under and statements in support of these assignments, rest their objection to the evidence complained of entirely upon their assumption that the witness' own testimony shows that he could not have been present at the time the cattle were unloaded so as to have knowledge by personal observation of the matters testified to and as above indicated. We do not think this contention is sufficiently supported by the evidence, either when confined to the testimony of the witness, or taken as a whole, to have sustained the court in excluding the evidence objected to, and we are further of the opinion that the evidence is not objectionable as hearsay, even if it appeared that the witness was not present when the cattle were unloaded and therefore not able to testify from his own personal observation, because his statements may have been based on information derived from a source that would bind defendants and render it admissible, and, from the evidence bearing upon this issue, we are unable to say that such was not the case. We therefore conclude that said assignments are without merit and the same are therefore overruled. Mo. Pac. Ry. Co. v. Sherwood, 84 Tex. 125, 19 S. W. 455, 17 L. R. A. 643; Gresham v. Harcourt, 33 Tex. Civ. App. 196, 75 S. W. 808; Mexican National Railway Co. v. Musette, 7 Tex. Civ. App. 169, 24 S. W. 524; S. K. of T. Ry. Co. v. Lockhart, 141 S. W. 129.

[4] Appellants, by their fifth assignment, complain that the court permitted the witness Art Little to testify, over their objection, as follows: "These cattle were not in good condition when I sold them; they were very much drawn and jaded and looked like they had been on the cars an excessive length of time"—the ground of the objection being that the same constituted an opinion and conclusion of the witness. We are unable to agree with appellants in their contention that this evidence in its entirety should have been excluded under the manner and form of the objection made, and are of the opinion that the court properly admitted the same. The only part of the evidence thus objected to that might be considered as an opinion of the witness is as follows: "And looked like they had been on the cars an excessive length of time." The witness testified by deposition and appellants, by their written objection filed, objected to the entire interrogatory and answer thereto,

without pointing out what specific part they objected to and the greater part of the witness' answer appearing to us to be a statement of facts of which he had personal knowledge and not merely an opinion or conclusion. Gulf, C. & S. F. Ry. Co. v. Kimble, 49 Tex. Civ. App. 622, 109 S. W. 236.

[5] We are further inclined to the opinion that the court was further warranted in admitting the evidence objected to on the ground that the same was expert testimony and that the witness had sufficiently qualified himself by his preceding evidence to be permitted to give his opinion in answer to the question propounded. Said witness having testified in part as follows: "My name is Art Little; I am 29 years of age; my occupation is salesman for the Lee Livestock Commission Company of Kansas City; I reside in Kansas City. In October, 1909, I was working at the Kansas City Stockyards, Kansas City, Mo., as cattle salesman for the Lee Livestock Commission Company, where I had been working as such salesman for about one year. I have had about 10 years' experience in selling cattle, and have had about 15 years in handling and dealing with cattle generally, working in different capacities on this market. I had something to do with the shipment of cattle made by T. J. Campbell from Tulia, Tex., arriving at Kansas City on the ——— day of October, A. D. 1909. I sold all the cattle in the shipment referred to. I sold these cattle on the 25th and 26th days of October, 1909."

[6] Appellants, under their sixth assignment, complain of the action of the court in excluding paragraph 5 of the written contract, under which appellee's cattle were transported. Said paragraph is as follows: "5. That at his or their own risk and expense the shipper will load his stock at the first-named station, take care of, feed, and water, and attend to the same while they may be in the stockyards of the company or lots where awaiting shipment and while the same is being unloaded, transported, unloaded, reloaded, and to load, unload, and reload the same at feeding and transfer or other points whenever the same may be unloaded for any purpose whatever, and will properly attend to and care for the stock while in the cars in transit or otherwise, and hereby agrees that the company shall not be held liable for any loss or damage to said stock while being so in the shipper's charge and so cared for and attended to by the shipper or his or their employés as aforesaid, and, in cases where the company shall furnish laborers to assist in the loading, unloading, and reloading of said stock, it is understood they are furnished for the accommodation of the shipper, and they shall be entirely subject to the shipper's order, and shall be deemed the shipper's employés while so engaged, and the company shall in no wise be liable for their acts of negligence." Appellee objected to the admission of said paragraph of

the shipping contract in evidence for the reason that the same was irrelevant and immaterial, and that said contract was void as against public policy as limiting the carrier's common-law liability, and that it did not purport to cover the class of loss in question. Whereupon the court sustained said objection and excluded said paragraph of said contract, and appellants here complain under said assignment that it was error to exclude that portion of said contract under which the shipper had agreed to look after the loading, unloading, and reloading of said cattle. As we understand the record, the purpose for which said paragraph of the contract of shipment was offered in evidence was not so restricted, and the paragraph embraced much more than the matter of looking after the loading, unloading, and reloading of said cattle. We are familiar with the cases in this state holding that a carrier may by contract require the shipper to unload, reload, and feed and water stock at his own expense, but we have been unable to find any case, and appellants have cited us to none, where such clause as is contained in the paragraph of this contract in question providing, not only for unloading and reloading, but attempting also to contract that the carrier shall not be liable for any loss or damage to the stock while being in the company's charge and being transported by the carrier, and at the same time cared for and attended by the shipper, has been passed upon by our courts. Or, in other words, that such carrier shall not be liable for any loss by whatsoever means, whether occurring while such stock were being unloaded, reloaded, or in transit, so long as they were accompanied by the shipper, and further contracting that the shipper shall take care of said stock en route and in transit. In our opinion, to uphold the validity of such contract would have the effect to absolutely absolve appellants from any loss of whatsoever kind occurring by any means during said entire trip to market, and not merely from loss occasioned by some specific cause due to the negligence of appellee and while said stock were being loaded, unloaded, fed, or reloaded, and this without reference to whether the appellants were negligent with reference to the performance of duty required of them as common carriers. As stated in 6 Cyc. p. 392: "Where the express language or evident purpose of the stipulation relieving the carrier from common-law liability is to exempt him from liability for his own negligence or that of his servants or agents, the stipulation is against public policy and is therefore void and of no effect. Therefore, if the stipulation is against all liability it is invalid; for the manifest purpose of such stipulation must be to relieve from negligence as well as from other grounds of loss, but, if the contract provides for exemption from certain forms of loss which do not necessarily involve negligence of the carrier or his servants, it will not be held to be totally void, but simply ineffectual where the loss appears to be due to negligence. We therefore conclude that the only part of said rejected paragraph of the contract of shipment material to any issue on this appeal, to wit, 'that the company shall not be liable for any loss or damage to said stock while being so in the shipper's charge, and so cared for and attended by the shipper,' is void as against public policy and as limiting appellants' common-law liability." 6 Cyc. p. 392, § 3, and cases there cited. A., T. & S. F. Ry. Co. v. Grant, 6 Tex. Civ. App. 674, 26 S. W. 286. We therefore conclude that there is no error shown under said assignment, and the same is accordingly overruled.

[7] Appellants, by their seventh assignment of error, complain of the following charge of the court: "You are further charged that if you find and believe from the evidence that the plaintiff delivered to the defendants for transportation 69 head of cattle to be transported from Tulia, Tex., to Kansas City, Mo., and that the defendant failed to deliver to the plaintiff the full number of said cattle either at their destination or en route, then you will find for the plaintiff for such number of said cattle as defendant failed to so deliver and assess your damages as hereinafter directed in this charge; but if you find from the evidence that the defendant redelivered to plaintiff or his duly authorized agent, either at destination or en route, the full number received by them for transportation, then you will find for the defendant, as to the loss of the cattle."

In view of the conclusion reached in disposing above of appellants' sixth assignment, and there being no contract shown by the evidence charging appellee with the duty of looking after and taking care of said cattle under any conditions or circumstances, from the time they were delivered to appellants until they were redelivered to appellee in Kansas City, as such duty could only arise under contract made to that end, the burden of proof was on appellants to show that the loss of the cattle in question was not caused by their negligence and is not changed by the fact that the shipper accompanied the cattle in the absence of such contract. We therefore conclude that there was no error in the charge complained of, and that the same properly submitted the law applicable to the facts of the case. Said assignment is accordingly overruled. Texas, etc., R. Co. v. Dishman, 38 Tex. Civ. App. 277, 85 S. W. 319, writ of error refused 101 Tex. 663, 85 S. W. 319, distinguishing Texas & Pac. R. Co. v. Arnold, 16 Tex. Civ. App. 74, 40 S. W. 829.

Appellants, under their eighth assignment, complain that the evidence wholly fails to prove that appellants did not deliver to appellee or his agent at Kansas City the number of cattle loaded on the car at Tulia, Tex., and raises again the question hereinbefore

decided as to the admissibility of the evidence of the witness Art Little passed upon and decided against appellants' contention, in overruling their first, second, third, and fourth assignments of error. We are of the opinion that the contention here presented is not supported by the evidence, and that the same amply proves the failure on appellants' part to deliver the number of cattle to appellee or his agent as loaded on the car at Tulia.

As hereinbefore indicated, finding no reversible error presented under either of appellants' assignments, we conclude that the judgment appealed from should be in all things affirmed, and it is accordingly so ordered.