## W. F. Ramsey v. W. J. Hurley et al.

### No. 6024.

1.　**Secondary Evidence.**—An instrument of writing was delivered by the owner to his counsel for suit in which it was to be used in evidence.　It was so used, and on a second trial the paper could not be found.　The office and papers of the attorney to whom it had been delivered were burned.　No one saw the paper since the former trial. On the second trial, *held* that parol evidence was admissible to the contents of said paper, but inasmuch as the fact to which it was used in evidence to establish could legally be proved by parol the ruling upon the testimony as secondary was immaterial.

2.　**Contradictory Record.**—Where the statement of facts and bills of exceptions contradict relating to a matter in controversy on appeal, it can not be said that the error, supported by the bills of exceptions but contradicted by the statement of facts, has been shown, and a reversal can not be claimed in such condition of the record.

3.　**Measure of Damages for Conversion of Chose in Action.**—The ordinary measure of damages for the conversion of choses in action is the amount on the face of the claims.

4.　**Preference of Creditor.**—If a debtor assign to a creditor a part of his assets, in a manner and for a purpose permitted and protected by law in other respects, it is wholly immaterial that he thereafter made an assignment for the benefit of his creditors, or that such preference was even in date to the general assignment.

Appeal from Johnson.　Tried below before Hon. J. M. Hall.

The facts are given in the opinion.

*Bledsoe & Fisher*, for appellants, cited Revised Statutes, arts. 2245 to 2262; Sayles's P. and P., secs. 511, 533; Sims v. Chance, 7 Texas, 561; Waul v. Hardie, 17 Texas, 553; Menard v. Sydnor, 29 Texas, 257; Rosenthal v. Middlebrook, 63 Texas, 333; Rev. Stats., art. 1317; Sayles's Texas Prac., 91; Keller v. Smalley, 63 Texas, 522; Frisby v. Withers, 61 Texas, 134; Traylor v. Townsend, 61 Texas, 144; I. & G. N. Ry. v. Underwood, 64 Texas, 463; Miller v. Jannett, 63 Texas, 82; Block v. Sweeney, 63 Texas, 420; 2 Pom. Eq. Jur., sec. 747; T. & P. Ry. Co. v. Tankersley, 63 Texas, 57; Redus v. Burnett, 59 Texas, 576; Cres. Ins. Co. v. Camp, 64 Texas, 524; Milliken v. Smoot, 64 Texas, 171.

*Poindexter & Padelford*, for appellees, cited Hamilton v. Rice, 15 Texas, 383; Reliance Lumber Co. v. W. U. Tel. Co., 58 Texas, 394; Wharton on Ev., secs. 159, 160; Rose v. Lewis, 15 Mich., 482; H. & T.

C. R. R. Co. v. Burke, 55 Texas, 343; Queen Ins. Co. v. Jeff. Ice Co., 64 Texas, 583; Id., 654; Greenleve, Block & Co. v. Blum, 59 Texas, 124; Frey v. Clifford, 44 Cal., 339.

ACKER, PRESIDING JUDGE.—This suit was brought by appellees on the twenty-fourth of December, 1883, in the County Court of Johnson County, and transferred to the District Court because of the disqualification of the county judge.

Appellees alleged in their petition that in 1882 they were the owners of a note for $1200, executed by T. D. Farris with J. S. Dougherty as surety, bearing interest at twelve per cent and to become due January 17, 1883; that about the last of November or first of December, 1882, Farris transferred and delivered to them certain claims (describing them) for the purpose of securing the paying of said note; that thereafter Farris as their agent collected a portion of said claims and took notes in settlement of the balance; that in 1883, and before bringing this suit, appellant wrongfully and without their consent got possession of said notes, aggregating the sum of $619.30, and which were worth that sum, and appropriated them to his own use and benefit, to appellees' damage in the sum of seven hundred dollars; that appellant had collected three hundred dollars or more of said notes. Prayer for judgment for the notes, for money collected on them, for costs, and for general relief.

Appellant pleaded specially that Farris made an assignment on January 4, 1883, for the benefit of his creditors, and he qualified as assignee, by virtue of which he alleged that the title to the notes was vested in him as assignee and he received them as such; that at the time he so received them nearly all the makers were and still are insolvent; that by great exertion and expense he had collected $231.15, which he had appropriated to the payment of debts established against Farris, and the remainder of said notes are wholly worthless; that appellees were cognizant of these facts, and informed him that they did not look to him or said notes; that the transfer of the notes to appellees, if ever made, was made in contemplation of an assignment by Farris, and for the purpose of giving an unlawful preference to appellees; that Farris was wholly insolvent, and if the accounts were ever transferred by him to appellees, the transfer was voluntary and without consideration, and made with intent to hinder, delay, and defraud creditors, of which appellees had notice; that the transfer from Farris to appellees was in writing and was made on January 2, 1883, and was not made in November or December, 1882; that the original transfer is on file with the papers in this cause, and is the only transfer made by Farris to appellees, and the same delivered by Farris to appellant, together with said notes. Prayer, if appellees should recover, that they be required to take the uncollected notes at their face value.

Appellees filed supplemental petition consisting of general denial, and

specially denying that the claims were insolvent when appellant received them, and alleging that they could then have been collected by reasonable efforts; that appellees could then have collected them, and that the claims were of the value alleged in the original petition, though now worthless; that appellant did not take possession of said notes as assignee; that the creditors for a very small amount of the debts of Farris accepted under the assignment, and that before appellant received said notes he had in his hands money and property of said assignor far in excess of the amount of debts accepted for; that he had long since paid off all accepting creditors; that appellant unlawfully converted the notes to his own use and benefit to their damage $750.

Appellant filed supplemental answer alleging that at or about the time allowed by law for creditors to accept under said assignment he was garnished by creditors of Farris holding valid claims against him far in excess of the value of assets received by him as assignee, including the notes and proceeds thereof sued for in this case, and judgment was rendered on said garnishments against him for the entire estate remaining in his hands after paying the claims of consenting creditors, including the notes and the proceeds now in controversy.

The trial was by jury and resulted in verdict and judgment against appellant for $738.28 and costs, from which this appeal is prosecuted.

The facts proved upon the trial, about which there seems to be no controversy, are substantially as follows:

That in 1882 T. D. Farris was a general merchant at Grandview, in Johnson County, and appellees Hurley and Smith held his note for $1200, with J. S. Daugherty as surety thereon, to become due on the 17th of January, 1883. In November, or early in December, 1882, Daugherty informed appellees that he expected to leave the county, and requested them to obtain from Farris other security on the note they held. Some time after this and prior to the 4th day of January, 1883, Farris transferred to appellees a number of claims due to him by persons residing in Johnson County, as security for the note. Most of these claims were in the form of accounts, and it was understood between the parties that they were to be collected, or converted into notes payable to appellees, at the expense of Farris.

By agreement the claims were placed in the hands of one Noah, to be collected or converted into notes, the proceeds to be paid to appellees to be credited on the Farris and Daugherty note held by them. Noah held the claims for about two weeks, made some collections which he paid over to appellees, but obtained no notes, because the debtors refused to execute notes to appellees. The claims were returned by Noah to appellees, and by them delivered to Farris to collect or convert into notes. Farris made some collections on the claims and paid the collections to appellees, and they were credited on the note. Farris removed from Johnson

County after he secured notes for such of the claims as he had not collected, and left the notes with W. D. Farris to be turned over to appellees, which he failed to do. In May, 1883, appellees brought suit on their note, and T. D. Farris then learned in August thereafter that the notes had not been delivered to appellees. Appellant was of counsel who brought suit on the note for appellees. Farris procured the notes he had left with W. D. Farris and turned them over to appellant.

T. D. Farris made a general assignment for the benefit of his creditors on the 4th day of January, 1883, under which appellant qualified as assignee. The inventory of Farris did not contain the claims transferred to appellees, nor did his schedule of debts contain the note held by them. Farris's indebtedness amounted to about $17,000, but $600 or $700 of which was accepted for under the assignment. Appellant, as assignee, at the expiration of six months from the assignment paid off the accepting creditors in full and was discharged by order of court, leaving in his hands about $3500, proceeds of the assigned estate, which was garnished by non-accepting creditors a day or two thereafter. The writs of garnishment were issued from the District Court of Nolan County, to which appellant answered consenting that judgment be entered against him for assets of the assigned estate remaining in his hands, including $231.15 which he had collected upon the notes turned over to him by T. D. Farris, plaintiffs in garnishment indemnifying him against further liability for the assets covered by the judgment against him, which included the uncollected notes received from Farris and the money appellant had collected on a part of them.

On January the 2nd, 1883, Farris executed a written transfer to appellees for the claims given to them as security for their note, which transfer was received by appellant with the notes and was filed with the papers in this cause.

Appellee Tom Smith testified to the claims having been transferred to appellees by Farris the last of November or first of December, 1882, and that "Farris showed us his books and we selected such claims as we were willing to take, and a list of said claims was written out and transferred to us. There were three lists of the claims made out. One was given to J. P. Noah, who was to collect the claims for us, one list was kept by Hurley, and one by me. I don't know what became of the lists that Hurley and Noah got, or whether the list that I got would be called an original or a copy. I kept the list I got until about the time this suit was brought, when I handed it to S. C. Padelford, one of our attorneys, and I saw it in court on the first trial of this case; I suppose it was burned when Padelford's office was burned, but do not know when the office was burned; I have made no search for said list or transfer."

This testimony was objected to by appellant upon the ground that appellees "had not shown the loss of the original transfer which was shown

to have been in writing, nor had they laid the basis for parol proof of its execution or contents." The objection was overruled and this ruling is assigned as error.

The paper about which the witness testified seems to have been no more than a list of the transferred claims. Such list could have served no useful purpose beyond identifying the claims transferred, and upon the question of identity there seems to be no controversy, for it was in effect admitted by appellant that the notes involved in this suit are part of the claims which appellees claim were transferred to them by Farris. Appellant specially pleaded that the only transfer ever made for the claims by Farris to appellees was made in writing on January 2, 1883, and was received by him at the time he received the claims and was filed with the papers in this cause and used in evidence on the trial. Appellees claimed under a transfer made the last of November or first of December, 1882, which might have been made as well by parol as in writing. We think, however, that considering the paper as the original written transfer its absence was satisfactorily accounted for, for the witness stated what he did with it and that he had not seen it since the first trial. S. C. Padelford, the attorney to whom Smith testified that he had delivered the list, testified that just before this suit was brought Smith handed to him a list of accounts made out in pencil that had no written transfer on it; that when this case was first tried he had the list in court and it was used on the trial; that it was then put among the papers of the cause and that he had not seen it since. If used in evidence on the trial it must be presumed that it was filed in the case, and if filed the proper place for it was with the papers in the custody of the court. If a file paper no one had the right to withdraw it without leave of court. Besides this the transfer of the claims to appellees in November or December, 1882, was testified to without objection by Farris, Noah, Hurley, and Dougherty, which we think renders the ruling here complained of immaterial.

The fourth assignment of error is as follows:

"The court erred in admitting the testimony of plaintiffs Smith and Hurley to the effect that they were of the opinion and believed that the notes sued for could have been collected by plaintiffs had they had possession of them since this suit has been pending, over objection of defendant as shown by bill of exception No. 2, which is hereby made a part of this assignment."

It appears from the bill of exception that "The plaintiff W. J. Hurley and Tom Smith, as witnesses in their own behalf, were permitted to testify substantially as follows: That they did not know what the notes sued for were worth, that is they did not know their market value, nor did they know that the makers of said notes had at any time since said notes were given any property subject to execution, nor that any of said notes

could have been collected by law, but that they believed that if they had had possession of said notes since this suit has been pending they, by taking pay in property and other things than money, could have collected all or most of said notes; that some of the parties offered to pay them in property in 1883, but they refused because they wanted money; that they don't know that the parties who gave said notes are any worse off financially now than they were when said notes were given, but don't believe since this litigation they would be willing to pay, and one of them has moved off, perhaps to the Indian Nation."

The objection to this testimony was upon the ground "that the market value of the notes with interest was the measure of damages; that said statements are but the conclusions and opinions of the witnesses, and that there is no basis in the pleadings for such testimony."

Upon an examination of the statement of facts we find that appellees Smith and Hurley testified as follows upon the question of their abilty to collect the notes sued for:

Smith testified: "I don't think any of the parties who owe the notes sued for had at the time the claims were transferred to us more than the law allowed them, except perhaps the crops made by them. At said time they were living in the neighborhood, and were good, honest men, and would pay small debts. I can't tell what the market value of these notes was. I don't think there was any market for them, but if we had had these notes I am sure we could have collected them. I could have collected a good deal of it in corn, cotton, and stock, as I did some of them when I had them. After the notes came into the hands of the defendant some of them promised to pay me if I could get the notes. I don't think they are worth anything now. Most all of these parties have moved off now. I don't know where they are."

Hurley testified: "I am unable to tell you what the market value of the claims sued for in this case was at the time they were taken by defendant. I don't think you could have sold them; there was no market for them; I don't think the parties owing said claims had more property than was allowed them by law, but they were honest and were considered good for small debts the size of the claims we had against them. The two Carruths had been indebted to me before that time in claims larger than those we had against them and they were prompt in paying me. In the year 1883 I was indebted to one of the Carruths in a larger amount than the claim against him which was transferred to Smith and me, and Carruth wanted me to pay him partly in said claims, but I couldn't do so because I couldn't get his note from defendant, and I had to pay Carruth the money which I owed him. Both of the Carruths during the year 1883 lived on my farm and cultivated a portion of it, and had I had the note against the other Carruth I could have collected it; he was willing

and able to pay me, but wouldn't pay me unless I would turn him over the note. I think that if Mr. Smith and myself had been permitted to have had possession of said notes we could have collected them all either in property or money. I do not think I could collect said notes now."

The foregoing is the entire testimony of these witnesses upon the questions of the solvency of the makers of the notes and appellees' ability to collect them as appears from the statement of facts, from which it is evident that the statement of their testimony as it appears in the bill of exceptions is not sustained by the statement of facts, but is in direct conflict one with the other. Which shall control? All reasonable presumptions must be indulged in support of the judgment, and he who would annul it must show us sufficient reason for doing so. As said by this court in McMichael v. Truehart, 48 Texas, 220, "but if the record contradicts itself and we are unable to determine to which portion of it credence should be given, we can not say whether the court below erred or not, and unless we could do this appellant has no right to a reversal of the judgment." See, also, Wiseman v. Baylor, 69 Texas, 67, upon the question of contradiction between the bill of exception and statement of facts. The witness Noah, who had had the claims for collection and collected a part of them, fully corroborated Smith and Hurley as to the solvency of the makers of the notes and the ability of appellees to have collected them, and also as to the fact that there was no market for the notes and that they had no market value.

In actions to recover damages for the wrongful conversion of a chose in action it is the purpose and policy of the law, as in other actions for damages, to give to the injured party compensation for the damage he has sustained. The ordinary measure of damages in such cases is the amount prima facie due on the face of the claim. If the claim for the conversion of which the suit is brought is really of less value than *its* face it devolves upon the defendant to prove that fact. Field on Dam., sec. 823 and note 33; 2 Sedg. on Dam., p. 403 *et seq.* and note a.

If the makers of the notes were solvent at the time they were wrongfully taken possession of by the defendant and they became insolvent while the possession of the notes was wrongfully retained by him, he would be liable to plaintiffs for the amount prima facie due on the face of the notes. King v. Ham, 6 Allen, 298.

If the notes had no market value but were of intrinsic value to the owners because of any peculiar circumstance or relation, the owners would be entitled to recover whatever they might show the notes to have been worth to them. Rose v. Lewis, 10 Mich., 483.

Appellees alleged in their pleadings that the notes were worth the sum of $619.30, and that they had sustained damage by the wrongful conversion in the sum of $750. Appellant specially pleaded the insolvency of

the makers of the notes except as to the amounts he had collected on them, and appellees replied that the notes could have been collected at the time they were received by appellant; that they could have collected them, though the notes are now worthless.

If appellant excepted to the pleadings of appellees there was no ruling by the court upon his exceptions and they were thereby waived. Whatever allegations the pleadings of appellees may have required to authorize the admission of the evidence of the solvency or insolvency of the makers of these notes, they were fully supplied by the allegations in appellant's pleadings. Hill v. George, 5 Texas, 87.

In effect appellant admits in his pleadings that he had received and converted the notes, and that the notes represented the claims that had been transferred by Farris to appellees on the second of January, 1883, two days before Farris made the assignment for the benefit of his creditors. Appellant sought to avoid liability for the conversion upon the ground that Farris was insolvent and the transfer was made in contemplation of making an assignment and to give unlawful preference to appellees, and that the claims were transferred by Farris without consideration and with intent to hinder, delay, and defraud his creditors, and that appellees had notice of such intent. These were questions of fact for the jury, and in our opinion they were fully and fairly submitted by the court. If the claims were in good faith transferred to appellees prior to the assignment in a manner and for a purpose permitted and protected by law, it was wholly immaterial whether the transfer was made two days or two months prior to the assignment.

The fifth, sixth, seventh, eighth, and ninth assignments of error all relate to alleged errors in charge of the court.

No special instructions were requested, and upon a careful examination of the entire charge we are not surprised that appellant asked none, for the court fairly and fully submitted the law applicable to every issue in the case, and we think the charge quite as favorable to appellant as the facts proved would justify. The charge is not subject to the criticisms made upon it by these assignments.

The tenth assignment of error complains of an alleged omission in the charge. A sufficient answer to this is that no special instruction was asked to cure the alleged omission.

What we have already said with respect to the sufficiency of the allegations of the pleadings to admit the evidence introduced on the trial and with respect to the charge of the court disposes of the eleventh and twelfth assignments.

The thirteenth assignment relates to the action of the court in overruling the motion for new trial, in which the several matters presented under the other assignments are presented as grounds for the motion, and we think it unnecessary to discuss these matters further.

After a careful consideration of every question presented we find no error in the record for which we think the judgment should be reversed, and we are of opinion that it should be affirmed.

*Affirmed.*

Adopted December 4, 1888.