## BUSH & TILLAR v. O'NEAL et al.

(Court of Civil Appeals of Texas. Texarkana. June 8, 1911. On Motion for Rehearing, Oct. 26, 1911.)

#### On Motion for Rehearing.

1. FRAUDS, STATUTE OF (§ 63*)—INTEREST UNDER CONTRACT OF SALE.

Under Sayles' Ann. Civ. St. 1897, art. 624, providing that no estate of inheritance or freehold or for a term of more than one year in lands and tenements shall be conveyed, except in writing, subscribed and delivered by the grantor, one who contracted to purchase land could only convey his equitable title arising from the contract by his written deed delivered to the grantee.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 100; Dec. Dig. § 63.*]

2. VENDOR AND PURCHASER (§ 204*)—AGREEMENTS BETWEEN PARTIES—BREACH—RIGHT OF ACTION.

Defendants contracted to sell a tract to plaintiffs, a part of the price being paid in cash and the remainder to be paid at stated future dates, the contract also providing that, upon violation of any of its terms, the contract should be forfeited, and the cash payments retained by defendants. Plaintiffs failed to make payments as agreed, and, after negotiation, defendants agreed to sell the land to a prospective purchaser from plaintiffs, acting both for themselves and plaintiffs, and to pay plaintiffs all received over the original price per acre to plaintiffs. Before making the sale, defendants repudiated such agreement and notified plaintiffs that they were acting for themselves only in reselling the land. Held, that plaintiffs' right of action was for damages for breach of defendants' agreement to waive their right to declare a forfeiture of plaintiffs' equity in the land because of their failure to make the payments due, and not to recover an amount received by defendants upon the resale of the land as plaintiffs' agent; that agreement having been rescinded by defendants.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 377; Dec. Dig. § 204.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by E. O. O'Neal and others against Bush & Tillar. From a judgment for plaintiffs, defendants appeal. Reversed, and judgment rendered for defendants.

Flournoy, Smith & Storer, for appellants. Capps, Cantey, Hauger & Short, for appellees.

WILLSON, C. J. Appellants owned about 50,000 acres of land in Scurry and other counties, which they contracted to sell to appellees. The contract was entered into on October 27, 1906, and was evidenced by a writing of that date. The price to be paid by appellees for the land was $6.50 per acre. They paid $10,000 on the purchase price at the time the contract was executed. By the terms of the contract $15,000 of the part remaining unpaid of the purchase price was to be paid May 11, 1907, and the remainder thereof at later dates. It was stipulated that in the event appellees should violate any of the terms and conditions of the contract, and "fail to perfect, consummate and carry out" same, the $10,000 paid by them should not be "considered or become a partial payment upon the lands," but should be "received, held and kept" by appellants as liquidated damages. The $15,000 due by appellees May 11, 1907, was not paid by them then nor afterwards. On that day appellant Tillar and his attorney and appellees Baker, J. F. O'Neal, and W. E. O'Neal had a conference in Mineral Wells. The testimony as to what then occurred was conflicting. That on the part of appellants was that Tillar then demanded payment of the $15,000, and, appellees refusing to pay, that he declared their rights under the contract to have been thereby forfeited. That on the part of appellees was that payment of the $15,000 was waived by Tillar, and that he agreed to go to Kansas City and act for them in closing a deal they claimed they had pending there with one Allen and one Rule, subject to an arrangement with Tillar as to certain details not specified in the testimony, whereby Allen and Rule were to assume their contract with appellants, and pay them (appellees) the sum of $25,000. As a result of the conference, on the Monday following said Saturday Tillar and Baker and J. F. O'Neal did go to Kansas City, where negotiations between Tillar and Allen and Rule were carried on, resulting in the consummation on May 22d of a contract between Tillar and Allen and Rule, whereby appellants sold the land to Allen and Rule, and agreed to convey same to Allen for $6.50 an acre, the price appellees had agreed to pay for it;

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

and $15,000. Appellees claimed that it was understood and agreed between themselves and Tillar that they should own all in excess of $6.50 per acre Allen and Rule might agree to pay for the land, that Tillar in negotiating and consummating the sale to Allen and Rule acted for them as well as for appellants, and that they were entitled to demand and receive of appellants as their own the excess over $6.50 per acre realized by appellants as a result of the sale to Allen and Rule. Their suit against appellants was commenced and prosecuted on this theory. Appellants denied the existence of such an understanding and agreement, and, among other things, claimed that appellees were advised by Tillar two days before he consummated the sale to Allen and Rule that he denied their right to any of the proceeds of the sale he was negotiating, and would refuse to account to them for any part of such proceeds. The sale by appellants to Allen and Rule was entirely on a credit, the purchase price being represented by Allen's promissory notes secured, except $15,000 thereof, by a vendor's lien on the land; and part of them, including said $15,000, being further secured by the guaranty of Rule and a pledge of certain life insurance policies issued to him. The $15,000 referred to as not secured by a vendor's lien was represented by notes in favor of appellee R. B. Pyron, who claimed same was paid to him by appellants on account of an indebtedness they owed to him as the result of other transactions between them. Appellants, however, claimed the $15,000 was paid to Pyron as a commission for his services in connection with the sale made to Allen and Rule. Appellees' suit was to recover the $10,000 paid by them to appellants at the time the contract of October 27, 1906, was entered into, and the excess over $6.50 per acre in addition to said $10,000 received by appellants on account of the sale to Allen and Rule. They obtained a judgment against appellants for the sum of $25,000 and interest thereon from May 11, 1907.

The action of the trial court in refusing to instruct the jury to find in favor of appellants as requested by them is attacked as erroneous on various grounds, only one of which, as we view the record, presents a question we have had difficulty in determining. That one is based on the character of the suit and undisputed testimony showing that Tillar on May 20th, before the contract with Rule and Allen was reduced to writing and executed by the parties to it on May 22d, advised appellees that he did not regard them as having any rights under the contract of October 27, 1906, and that he would not account to them for any part of the proceeds of the sale he was negotiating with Rule and Allen, and is suggested by a proposition as follows under the seventh assignment: "This suit being for a part of the proceeds of the sale of the Bush & Tillar lands, based on the alleged verbal agreement, and not being a suit for damages, the repudiation of the alleged agreement by Tillar at least two days before the execution of the contract of sale to Rule and Allen by Bush & Tillar and the notice to appellees that he would trade on his own account and for his own benefit, and the fact that Tillar did contract solely in the name of his firm and for the benefit of his firm and in no sense as the representative of appellees, the jury should have been instructed to return a verdict for the defendants." It is insisted by appellees that the testimony was sufficient to support a finding that Tillar commenced, and until May 20th carried on, the negotiations with Rule and Allen under an agreement which bound him to act for them in disposing of their rights under the contract of October 27, 1906, and that, having acted so far for them, he could not so defeat the right they acquired by the agreement under which he acted to demand and receive of appellants the excess over $6.50 per acre received by them of Rule and Allen for the land. It is conceded by appellants in their brief that appellees might when they were advised by Tillar as stated have paid the $15,000 due by them on May 11, 1907, by the terms of their contract of October 27, 1906, and have demanded and enforced a performance by them (appellants) of that contract. If appellees had such a right then, and we agree that they did, they had it at the time Tillar agreed, as they contend, to act for them as well as for himself in the negotiations with Rule and Allen. The value placed by appellees and Tillar on that right, according to the contention of the former, was the excess over $6.50 per acre for which the land might be sold to Rule and Allen. It was in negotiating a sale by which such an excess would be secured that appellees claimed Tillar undertook to act for them. A majority of the members of this court are of the opinion that if Tillar understood the negotiations and commenced and carried same on for appellees until May 20th, when an agreement was reached with Rule and Allen whereby they were to pay such an excess for the land, it would be permitting appellants to profit by their own wrong to hold that the renunciation then made by Tillar operated as a rescission of the contract of October 27, 1906, and entitled appellants to claim as their own the excess over $6.50 per acre they received of Rule and Allen as the consideration for the land when the sale was finally consummated on May 22d. Therefore they are further of the opinion that appellants should not be heard to say that Tillar did not act for appellees when he concluded the sale, and received of Rule and Allen the paper representing the purchase price. The writer is not entirely satisfied that the conclusion reached is a correct one on the facts of the case, and that the renun-

ciation by Tillar of the agency and his denial on May 20th of any right in appellees under the contract of October 27, 1906, and the sale by him to Rule and Allen May 22d, should not be treated as a rescission by appellants of that contract. If it should be so treated, appellees' remedy was not to recover the excess as something received by Tillar for them as their agent, but was to recover such damages as they could show they had suffered because of a breach by Tillar of his undertaking, if any, not to exercise the right which, but for such undertaking, appellants possessed to rescind that contract, and to act for them in making the contemplated sale to Rule and Allen. Of course, it is true, if Tillar could not then rescind the contract of October 27, 1906, and should be held to have acted for appellees in consummating the sale, appellants should not be heard to say that appellees were not entitled to the excess; for an agent is bound to good faith towards his principal, and will not be permitted to make a profit at his expense. But, as stated above, it is not clear to the writer that the right to rescind did not exist in favor of appellants on May 22d, after they, through Tillar, had notified appellees on May 20th that they intended to do so. No reason is suggested by anything in the record why appellees, when they were so notified, should not then have exercised the right they possessed to pay the $15,000 due by them to appellants on May 11, 1907, and demand a conveyance of the land to themselves. If, instead of doing so, they chose to rely upon an undertaking by Tillar not to rescind and to act for them in consummating the sale, the writer is not satisfied that their remedy was not in damages for the breach of such an undertaking, and that they should not have been denied the relief they sought.

It is further insisted that because of the provision in the statute of frauds which declares that no action shall be brought in the courts of this state to charge any person "upon any contract for the sale of real estate" unless the same "shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized" (Sayles' Stat. art. 2543), appellees were not entitled to maintain their suit. We do not think that statute has any application to the case made by the pleadings and the testimony. The suit was not upon a contract to convey the land. It was for a failure on the part of appellants to account to appellees, as the owners thereof, for a part of the proceeds of a sale of the land made by Tillar. If appellees owned an interest in the land which Tillar as their agent, as they asserted, sold to Rule and Allen, the part of the proceeds of the sale which represented their interest so sold belonged to them, and they were entitled to maintain a suit for the recovery of same. We are unable to see how their right to maintain such a suit could be held to be affected by the statute of frauds.

The testimony was undisputed that the only consideration for the conveyance from appellants to Allen and Rule was Allen's promissory notes for sums aggregating a sum equal to the value of the land at $6.50 per acre and $15,000 in excess of that value. It was not pretended that appellees were entitled to recover of appellants anything in excess of the $10,000 paid by them at the time the contract of October 27, 1906, was executed, and the excess, including said $10,000, over $6.50 per acre received by appellants of Allen as the consideration for the conveyance of the land to him.

The court instructed the jury as follows: "If you believe from the evidence that after plaintiffs and defendants entered into the written contract offered in evidence, dated October 27, 1906, and before or on May 11, 1907, plaintiffs had secured an agreement from Rule and Allen for the purchase by said Rule and Allen from the plaintiffs of all the rights and interest vested in the plaintiffs under and by virtue of said written contract between plaintiffs and defendants for the sum of $25,000 and $6.50 per acre, and that thereafter, and on or about the 11th day of May, 1907, the defendant Ben J. Tillar, for himself and for the firm of Bush & Tillar, entered into an agreement with the plaintiffs that they, the defendants, would, in lieu of any further payments which might then be due from plaintiffs under the contract of October 27, 1906, conclude and make for plaintiffs and themselves the trade with said Rule and Allen, and make conveyances of or contracts for the land described in said written contract of October 27, 1906, direct to said Rule and Allen, and that defendants would preserve for the plaintiffs' benefit any advanced consideration or bonus which you believe from the evidence said Rule and Allen had agreed, at that time, to give plaintiffs over and above the $6.50 an acre, and that the defendants Bush & Tillar and Ben J. Tillar would accept for themselves the $6.50 per acre and give to the plaintiffs, or account to the plaintiffs for, all amounts over and above such sum of $6.50 per acre, as they might be able to contract for with said Rule and Allen, and you further believe from the evidence that, in consideration of such agreement, the plaintiffs notified Rule and Allen that they should deal directly with said Ben J. Tillar with reference to said matters, and they did so deal with said Tillar with reference to said contracts for the sale of said lands, and you further believe from the evidence that the defendants did in pursuance of said agreements and understandings, if any, contract for the conveyance of said lands (mentioned and described in said contract of October 27, 1906) to said Sidney P. Allen with the guarantee of said Rule, and the same was acceptable to said defendants, and they, the defendants, did re-

ceive, realize, or secure satisfactory contracts for any amount of money in excess of $6.50 per acre for said lands, then it will be your duty to find for the plaintiffs the amount which you find from the evidence said defendants realized or secured satisfactory contracts for the payment of in excess of $6.50 per acre, with interest at the rate of 6 per cent. per annum from the date of the consummation of such sale to said Rule and Allen by the defendants." It is insisted that, if appellees were entitled to recover, the measure of their recovery was the real and not the face value, if different, of the portion of the paper representing the excess over $6.50 per acre received by appellants for the land, and that the testimony made an issue as to whether the paper was worth its face value or less. It is therefore further insisted that the instruction in directing the jury to find in appellees' favor for the face value of the paper was erroneous. The theory upon which appellees sought and obtained the recovery they had, as stated before, was that they owned the excess over $6.50 per acre appellants received for the land. If entitled to recover at all, appellees were entitled to recover only the value of that excess. That value prima facie was the face of the paper representing the consideration for the conveyance to Rule and Allen. But appellants were entitled to show that the real value was less than the face value of the paper, and to have the recovery by appellees limited to the real value. 2 Suth. on Dam. § 565; 4 Suth. on Dam. § 1132; Brightman v. Reeves, 21 Tex. 76; Tompkins v. Perry, 128 S. W. 1164; Ramsey v. Hurley, 72 Tex. 194, 12 S. W. 59. Hence, if there was testimony which the jury might have treated as sufficient to rebut the presumption that the paper was worth its face value, the instruction must be held to be materially erroneous in the particular complained of. Without quoting it, we state it as our opinion, after examining the record, that there was testimony which would have supported a finding that the paper was worth less than its face value. For this error in the charge we feel bound to reverse the judgment.

Of the notes made by Allen and Rule, representing the price they were to pay for the land, $15,000 thereof was, as stated before, delivered to appellee Pyron. The testimony on the part of appellants tended to show that this amount was delivered to Pyron in satisfaction of a demand he made on Tillar for compensation for services he claimed he had rendered in connection with the sale made to Rule and Allen. The evidence to the contrary is found in testimony of Pyron, detailing a conversation between himself and Tillar which occurred on May 20th, after Tillar had notified appellees that he did not regard them as having any interest in the sale of the land he was negotiating with Rule and Allen, and that he would not ac-

count to them for any of the proceeds thereof, as follows: "I believe it was Monday evening," he said, "that I said to Mr. Tillar: 'Now, talking for Bob Pyron, and also talking for my associates,' I says, 'there is one thing sure, I have worked like a dog on your proposition for about a year and I have spent my money; and,' I says, 'you know I have put at least $13,000 in this deal, have spent at least $2,000 in the last two or three months trying to pull these things around, and now I have got them to a place where we can close them and you are here for that purpose; and,' I says, 'there is one thing sure, you are going to settle for the $15,000 at least, and,' I says, 'I ought to have $25,000, is what I am really entitled to, but,' I says, 'I am going to have as much as $15,000 anyhow.' He says: 'Well, you forfeited your right the same as the rest of them.' I says: 'I don't know that that would be right, and,' I says, 'I will tell you one thing, I don't think you will feel very good if you undertake to beat me out of my per cent. and money when you get through.' I had reference to the money I put in the deal and my commissions I had earned on the first sale." After testifying about a conference had later in the day between Tillar and himself and his associates, during which Tillar stated to appellees, "If you all think you are in on this, you are mistaken. You just as well go home," Pyron further testified: "Then I taken him (Tillar), and walked off, about my own personal commission of the $15,000, and we walked off a few feet, and I says, 'Do you propose to tell me that I had just as well go on home, too? I am talking personally now, and we are all here together talking this over; and,' I says, 'do you mean to tell me to go on home, and that I am not going to get my money out of this deal that I have got in it?' And he says: 'Well, just shut your mouth, and let it all go, and I will take care of you for $15,000.' He says: 'Let it go.' I think that was on Monday evening. I would not be positive that was Monday evening, but that is the best of my recollection. I says: 'Mr. Tillar, this is my own personal matter. Now,' I says, 'when it comes to my associates,' I was representing my associates in making this sale, and I says, 'if you go ahead and make this deal and close it out, we are going to look to you for our profit all the way through in the matter.'" Without reference to the issue made by the testimony referred to, the court in his charge, on conditions stated therein, authorized the jury to find in appellees' favor for the $15,000 paid to Pyron as a part of the excess in question. If the $15,000 or any part of it paid to Pyron was demanded and accepted by him as a commission on the sale made to Rule and Allen, clearly he was not entitled to recover anything as against appellants, and, in so far as it authorized a recovery by him in such an event, the charge was erroneous. Pyron was

not entitled to demand and receive of appellants pay for services he may have rendered in selling his own property. Therefore, if the $15,000 was paid to him as a commission on the sale to Rule and Allen, by his acceptance thereof he should be held to have recognized as existing the right asserted by Tillar to sell the land on appellants' account alone, and should not be heard to say that the sale was by Tillar as his agent. As Pyron would not be entitled to recover against appellants in such an event, the charge also was erroneous as to the other appellees; for, if Pyron was not entitled to recover, the recovery by the other appellees should by the charge have been limited to the excess less the interest therein which Pyron, but for his acquiescence in the sale by Tillar of the land on behalf of appellants alone would have been entitled to receive.

The assignments not disposed of by what has been said are overruled.

The judgment is reversed, and the cause is remanded for a new trial.

### On Motion for Rehearing.

Further consideration of the record has convinced us that the court should have peremptorily instructed a verdict in favor of appellants, and therefore that the seventh assignment, complaining of his refusal to do so, should have been sustained. As, conformably to this conclusion, a judgment in favor of appellants will be rendered here, it is immaterial, so far as the appeal is concerned, whether the rulings made by us when the record was first before us were correct or not. We therefore will not undertake to justify those rulings as against the attack made on them by appellant, that they were not authorized by assignments in the record, and that, if they were, they were erroneous. If erroneous, we think they were so as against appellants in holding that on the case made appellees were entitled to any relief at all. We were and are yet unable to agree, as contended for by appellees, that under the agreement claimed to have been entered into by the parties at Mineral Wells Tillar "became possessed" of their "equitable," quoting from the brief, "title and estate in this land upon an express trust to convey our interest in that land to our own purchaser and account to us for our part of the proceeds after he had gotten in a position to execute that trust." It might be said that appellants held the legal title to the land in trust for appellees so long as their contract for the purchase thereof was alive, but it cannot, we think, be said that they or Tillar held for appellees the equitable title they had in or to the land.

[1] That title, it seems, could have been passed by them to Tillar only by a deed in writing executed and delivered by them to him. Sayles' Stat., art. 624; Clitus v. Lang-

ford, 24 S. W. 325; Wilson v. Nugent, 91 S. W. 242; Sanborn v. Murphy, 5 Tex. Civ. App. 509, 25 S. W. 459. It is not pretended it was so passed.

[2] If Tillar should not be treated as a trustee holding for appellees an equity they owned in the land, then the wrong he did them could not have been to pass to Rule and Allen such an equity; for, if he was not such a trustee, he could not, had he attempted to do so, by any act of his, have passed to Rule and Allen an equity belonging to appellees. The wrong he did appellees consisted of his refusal to comply with his agreement to waive for appellants their right to declare a forfeiture of appellees' equity in the land because of the latter's failure to make the payment due by them May 11, 1907, and to act as their agent in negotiating a sale of that equity to Rule and Allen. Appellees' remedy for this wrong was not to recover of appellants as something they (appellants) had received on their (appellees') account, a portion of the consideration paid by Rule and Allen for the land, but it was for damages for breach of the undertaking by Tillar to waive the forfeiture and act for them in effecting a sale of their equity to said Rule and Allen.

The judgment heretofore rendered remanding the case will be set aside, and a judgment will be here rendered that appellees take nothing by their suit against appellants.