COKER v. COOPER'S ESTATE. (No. 5463.)

(Court of Civil Appeals of Texas. San Antonio April 28, 1915. Rehearing Denied May 19, 1915.)

1. APPEAL AND ERROR ☞736 — QUESTIONS REVIEWABLE—MULTIFARIOUS ASSIGNMENTS.

An assignment of error, which complains of a ruling on evidence and of remarks by the trial court in making the ruling, is multifarious and will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. ☞ 736.]

2. APPEAL AND ERROR ☞664—BILL OF EXCEPTIONS—STATEMENT OF FACTS—CONCLUSIVENESS.

Matters appearing in the approved statement of facts control the bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2856-2859; Dec. Dig. ☞ 664.]

3. APPEAL AND ERROR ☞1046 — HARMLESS ERROR—RULINGS ON EVIDENCE—REMARKS OF TRIAL JUDGE.

Where the attorney of a party accused the judge of interfering with his cross-examination, the remarks of the court that it would interfere when it thought it necessary, and that this was the third time the identical question was asked, and that further questions along that line would not be permitted, were not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4128-4131, 4134; Dec. Dig. ☞1046.]

4. EVIDENCE ☞291—DECLARATIONS — PEDIGREE.

An illegitimate child may testify that her mother, since deceased, told her the name of her father.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1150; Dec. Dig. ☞291.]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Proceedings by E. W. Robinson for the probate of the will of H. C. Cooper, deceased, in which Abraham Coker appeared as contestant, and in which Bettie Collins intervened. From a judgment admitting the will to probate, contestant appeals. Affirmed.

Baldwin & Baldwin and John L. Meany, all of Houston, for appellant. Harry Holmes, of Houston, for appellee.

CARL, J. The consideration of this case carries us back to antebellum days, and gives us a partial view of life among the slaves "way down on the Suwanee river"; for there on the verdant banks of that seductive stream abode one Creecy Brandon, a damsel of dusky hue, who at that time found favor in the sight of one H. C. Cooper, another slave. After emancipation, Cooper joined the army and marched away in the uniform of a soldier, never again to return; for he settled at Houston, Tex., where he lived to a ripe old age. But the record shows that his heart "was turning ever" to Georgia's song-famed stream. The relations between Cooper and Creecy Brandon were doubtless very friendly, and, while he did not know her second daughter's name, he seemed convinced that in her veins coursed the blood of his own lineage; for as he sat in his cabin in far away Texas, looking back over the lapse of half a century, memory again turned to the Suwanee river, and the unfulfilled obligations of his early manhood. Creecy had preceded him across "that other River" some 30 years, but the child remained, and there is where the old negro's heart was turning when he considered what he should do with the small share of this world's goods that he possessed. He made a will and gave his property to Creecy Brandon's second daughter, who is Bettie Collins, the same who won this suit below. Cooper died in Harris county, Tex., November 9, 1911, and on November 13th of the same year, E. W. Robinson filed for probate a will of the said Cooper, wherein, after providing for the payment of his debts, he bequeathed to "My beloved daughter, a child born out of holy wedlock, the same being a girl child and being the second child born to Creecy Brandon, who at the time of the emancipation of the African slaves in this country in the year 1865 belonged to Joe Brandon, a slaveholder, who lived in the county of Gwinnett, in the state of Georgia, near the Suwanee river, the name of which child I do not know," etc. On January 23, 1912, Abraham Coker, Cooper's brother, filed a contest of the will, alleging that this was not the will of H. C. Cooper; that he never signed the same and never ordered it signed for him; that there was no such beneficiary in existence as mentioned in the will; that at the time the will purported to have been executed Cooper was not of sound mind and was laboring under insane delusions; and that undue influence was used on him by Broyles and Robinson to get him to execute the same. It is charged that M. H. Broyles, a negro lawyer, who drew the will, and E. W. Robinson, the executor named, knew of his condition and that Cooper could not understand what he was doing, and, by pretending to be his friends, when in fact they were not, they induced the execution of said will, in the belief that no such beneficiary as therein described existed; the purpose being to deprive contestant of the property as the testator's heir. Bettie Collins, of Calhoun county, Ala., was permitted to intervene, and she alleged that she exactly fits the description of the beneficiary in the will; that she was the second child born to Creecy Brandon, who at the time of her birth, and at the time of the emancipation of the slaves, belonged to Joe Brandon, a slaveholder, who lived in Gwinnett county, state of Georgia, near the Suwanee river; and that she was the person referred to in the will. The will was admitted to probate in the county court, an appeal taken to the district court of Harris county, where the case was tried upon special issues,

again resulting in establishing the fact that Bettie Collins is the beneficiary named and admitting the will to probate, etc.

[1, 2] The first assignment will not be considered because of the fact that it is multifarious, one part complaining of the ruling of the court in sustaining objections to evidence, and the other complaining of remarks by the trial court in making his rulings. That assignments dealing with two or more alleged grounds of error will not be considered is so well settled now that we will not incumber the books by citing authorities. We may say, in passing, however, that the statement of facts shows that Broyles did testify on the matters upon which it was sought to lay a predicate to impeach him, and it matters not what is shown in the bill of exceptions. The statement of facts controls. Broyles had said he lived in Georgia two summers only; that he taught school in Southern Georgia in Elbert county; that he was never in Gwinnett county and did not know whether the Suwanee river runs through that county or not, and does not know how far that river, so famous in southern melody, is from where he taught school. Helsley v. Moss, 52 Tex. Civ. App. 57, 113 S. W. 599; Sullivan v. Fant, 160 S. W. 617; Scott v. Childers, 24 Tex. Civ. App. 349, 60 S. W. 775; Ramsey v. Hurley, 72 Tex. 194, 12 S. W. 56.

[3] What we have just said about the matters appearing in the approved statement of facts controlling a bill of exceptions disposes of the second and third assignments of error adversely to appellant. The trial court did not say anything, in making his ruling, that could be construed as a comment upon the testimony. Nor did the court say anything that was calculated to place appellant's attorneys in an unfavorable light before the jury. They were permitted to cross-examine Broyles at great length, and after he had been taken over the entire field from South Carolina, through Georgia, to Texas, over a period of two hours or more, the court simply stated that it was the third time they had asked that question, and stopped further examination on a matter that had been thoroughly gone over. If courts did not control cases and use sound discretion as to how long the examination of a witness should continue, trials would become interminable and degenerate into judicial farces. The attorney had accused the judge of interfering with the examination, and, doubtless smarting under that charge, the court said:

"I will interfere whenever I think it necessary. That is the third time that identical question has been asked."

And the bill shows that the court thereupon refused to permit "further questions along this line." The court did not err in this respect. The second and third assignments are overruled.

The evidence excluded, as shown in the fourth assignment of error, was hearsay and properly excluded; and even if it had been admitted it would not probably have changed the result of the trial and would have been harmless. Furthermore, the bill of exceptions No. 9 does not show that it was offered for the purpose of impeachment. The assignment is overruled.

[4] The fifth assignment complains of the action of the court in permitting Bettie Collins to testify that her mother, Creecy Brandon, had told her that her father's name was Hardwell Cooper. "I don't remember of ever seeing him." The ground of objection was that it was hearsay. It was shown that her mother, Creecy Brandon, had been dead about 30 years, and, if Creecy did not know who her father was, then no one did. It was clearly admissible as being family history, and the assignment is overruled. Byers v. Wallace, 87 Tex. 503, 28 S. W. 1056, 29 S. W. 760; Wiess v. Hall, 135 S. W. 384; Fowler v. Simpson, 79 Tex. 611, 15 S. W. 682, 23 Am. St. Rep. 370; Louder v. Schuler, 78 Tex. 103, 14 S. W. 205, 207; 2 Wigmore on Evidence, § 1492, p. 1855; 16 Cyc. 1223.

The other assignments are without merit, and the judgment of the trial court is in all things affirmed.