SOUTHERN KANSAS RY. CO. OF TEXAS et al. v. HUGHEY. (No. 881.)*

(Court of Civil Appeals of Texas. Amarillo. Jan. 26, 1916.)

1. APPEAL AND ERROR &1033 — REVIEW — HARMLESS ERROR.

In an action to recover the value of hogs, which died in transit, and for damages to the remainder, admission of evidence as to the value of the hogs at the point where the dead ones were removed is harmless, though erroneous, where evidence showed the value of such animals at the point of destination was greater than their value at such intermediate point.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. &1033.]

2. CARRIERS &228 — CARRIAGE OF LIVE STOCK—ACTIONS—ERROR.

In an action to recover for the death of hogs in transit and injury to remainder of the shipment, the measure of damages is the market value, if there be one, at the point of destination; but testimony of the weight of the dead hogs which were removed at an intermediate point, together with the testimony of the value at that point, and the value at point of destination, which was greater, is admissible.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. &228.]

3. CARRIERS &229 — CARRIAGE OF LIVE STOCK—ACTIONS—MEASURE OF DAMAGES.

Where hogs died in transit, the measure of damages is their market value at point of destination, or, in case there was no market value, their intrinsic value at such point.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. &229.]

4. EVIDENCE &474 — OPINION EVIDENCE — ADMISSIBILITY.

Plaintiff, who had shipped hogs a number of times, may testify as to the normal shrinkage of hogs resulting from shipment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. &474.]

5. PLEADING &412 — REPLY — FAILURE — WAIVER.

In an action for the death of part, and injury to the remainder, of a shipment of hogs, where the railway company, which pleaded that it was the duty of the shipper to properly feed, water, and care for the hogs en route, went to the trial without objecting to the shipper's failure to controvert the answer, its right to insist that the averments of the answer should be taken as confessed was waived.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1387–1394; Dec. Dig. &412.]

6. CARRIERS &218 — CARRIAGE OF LIVE STOCK—DEFENSES.

The agreement that a shipper should care for animals in transit is no defense to an action for damages to the same, unless the railroad company showed adequate facilities were provided, and the agreement was reasonable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. &218.]

7. APPEAL AND ERROR &664—BILL OF EXCEPTIONS—STATEMENT OF FACTS.

Where there is a conflict between a bill of exceptions and statement of facts as to the proceedings at trial, the statement controls.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2856–2859; Dec. Dig. &664.]

8. CARRIERS &218 — CARRIAGE OF LIVE STOCK—AGREEMENTS—REASONABLENESS.

A stipulation in a contract for shipment of live stock that the shipper would load the stock, care for and attend them while they were in the stockyards, and that the carrier should not be liable for any loss or damage while the stock were in the shipper's charge, is invalid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. &218.]

9. CARRIERS &218 — CARRIAGE OF LIVE STOCK—DEFENSES.

An agreement requiring the shipper to inspect the cars, and accept them if in good condition, and declaring that, in the event of failure, it shall be conclusively presumed that the cars were suitable, is void.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. &218.]

10. CARRIERS &218 — CARRIAGE OF LIVE STOCK—STIPULATIONS—VALIDITY.

Under Rev. St. arts. 708, 710, forbidding a carrier from limiting its responsibility otherwise than it existed at common law, a stipulation in a contract of shipment that the shipper could not hold the railroad company liable for

injuries to live stock because of heat, suffocation, or other results of being overcrowded in the cars, and that any injury should be presumed to have resulted from overloading, is invalid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. ☞218.]

11. CARRIERS ☞218—CONTRACTS OF PARTIES.

An agreement in a contract for the shipment of live stock that suit should not be brought after 6 months is invalid, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5713, declaring that it shall be unlawful for any corporation to enter into any contract by reason whereof the time in which to sue is limited to less than 2 years.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. ☞218.]

12. CARRIERS ☞218 — CARRIAGE OF LIVE STOCK.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, declaring that no stipulation in any contract requiring notice to be given of claim for damages as a condition precedent to the right to sue shall be valid, unless the stipulation is reasonable, a stipulation in a contract for the shipment of live stock, requiring presentation of claim to be made within 91 days is no defense, and cannot be relied on, unless its reasonableness be pleaded.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. ☞218.]

13. CARRIERS ☞227 — CARRIAGE OF LIVE STOCK—ACTIONS—PRESUMPTIONS.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, declaring that it will be presumed that notice of claim has been given, unless want of notice has been specially pleaded under oath, evidence that notice of claim for injuries to a shipment of live stock had not been given within the time fixed in the contract of shipment cannot be received, where a want of notice was not especially pleaded under oath.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 232, 953–956; Dec. Dig. ☞227.]

14. CARRIERS ☞227 — CARRIAGE OF LIVE STOCK—EVIDENCE—ADMISSIBILITY.

In an action for injury to shipment of live stock, a contract of shipment, part of the stipulations of which were void, and the other portion of which were not properly pleaded, is properly rejected.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 232, 953–956; Dec. Dig. ☞227.]

15. CARRIERS ☞230 — CARRIAGE OF LIVE STOCK—ACTIONS.

Where a shipper of live stock sought recovery for negligent delay, as well as mishandling, a charge that, if the shipment was forwarded on the first train, there could be no recovery, is erroneous, because disregarding other negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ☞230.]

16. CARRIERS ☞213 — CARRIAGE OF LIVE STOCK.

Though the market price was higher on the day the shipment reached the point of destination than on the day it should have reached there, the carrier is not entitled to a peremptory instruction, where the shipper sought recovery, not only for depreciation of the market, but on account of shrinkage of animals by reason of delay.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 920–922; Dec. Dig. ☞213.]

17. APPEAL AND ERROR ☞930 — REVIEW — PRESUMPTION.

Where the verdict was general, and it appeared that, as to some of the claims of recovery, plaintiff was not entitled, it will be presumed on appeal that no part of the recovery was on account of such claim.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. ☞930.]

Appeal from Gray County Court; Siler Faulkner, Judge.

Action by I. D. Hughey against the Southern Kansas Railway Company of Texas and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Hoover & Dial, of Canadian, Turner & Rollins, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellants. Kimbrough, Underwood & Jackson, of Amarillo, for appellee.

HALL, J. Appellants call our attention to the fact that in disposing of the sixth assignment we announced the rule with reference to the admission of the shipping contract in evidence as it has been declared in the motion for rehearing in G., C. & S. F. Ry. Co. v. Winn Bros., 178 S. W. 698. The correct rule is stated in the original opinion of that case, as is held in Scott v. Townsend, 166 S. W. 1138, and Jamison v. Dooley, 98 Tex. 206, 82 S. W. 780. The original opinion is therefore withdrawn, and this is substituted:

Appellee sued the Southern Kansas Railway Company of Texas and the Ft. Worth & Denver City Railway Company of Texas, for damages growing out of the shipment of two cars of hogs, from Pampa to Ft. Worth, Tex. It is alleged that four hogs of the first shipment and three of the last died in transit, and damages are claimed to the remainder, by reason of rough handling, delay, and decline in the market. The Southern Kansas Railway Company denied that it was guilty of any negligence, and by way of special answer pleaded that the shipments moved under written contracts, the fourth paragraph of which provided that the shipper should, at his own cost and expense, properly bed the cars in which the hogs were to be transported; that the carrier should not be responsible for any loss or damage that might result because of heat, suffocation, or other results of being crowded into the cars; that by the fifth paragraph of the contract it was provided that the shipper would, at his own risk and expense, load the stock, take care of and attend the same while they were in the stockyards awaiting shipment and while being loaded, and agreed that the company would not be liable for any loss or damage to said stock while being in the shipper's charge, or so cared for and attended to by him. The stipulation providing for notice in writing within 91 days after the damage accrued was

also set up, and the ninth paragraph of the contract, limiting the right to sue to 6 months after the loss or damage had accrued. Plaintiff did not file any supplemental petition.

The Ft. Worth & Denver City Railway Company also pleaded that it forwarded both said shipments on the first through train from Amarillo after the receipt of the car from its codefendant, that they were forwarded to Ft. Worth as promptly as same could be done, and that there was no decline in the market from the 8th day of September to the 9th of September, the date of the first shipment, or from the 24th of November to the 25th of November, the date of the last shipment.

[1] It is urged under the first assignment of error presented in the brief of the Southern Kansas Railway Company that the court erred in not sustaining the defendant's objection to the testimony of the plaintiff with reference to the market value of the hogs at Amarillo on their arrival. Reference to the statement of facts shows that the market value of the hogs at Ft. Worth, the destination of the shipments, was also established, and, so far as we know, the verdict is based upon the market value at Ft. Worth. No injury is shown by the admission of this evidence. Appellants could not have been injured, since the uncontradicted testimony shows that the value at Ft. Worth was greater than, as stated by the witness, the market value at Amarillo.

[2, 3] Under the second assignment it is urged that the court erred in not sustaining the objections to plaintiff's testimony with reference to the value of the hogs which died at Amarillo. It is true that the measure of damages is the market value if there is one, and if not then the intrinsic value of the hogs at the point of destination, and not at any intermediate point where they may have died. This was not an action for conversion. I. & G. N. Ry. Co. v. Parke, 169 S. W. 397; Railway Co. v. Chittim, 40 S W. 23. Reference to the statement of facts shows that the witness testified as follows:

"I was acquainted with the value of hogs at that date. I was acquainted with the market value of hogs on or about the 7th day of September, 1913. The hogs would have brought a little less in Amarillo than at Ft. Worth on that date. At Amarillo they were worth about $8.75 a hundred. I know what they would have been worth at Ft. Worth. We sold other hogs similar to these that were in the same shipment at Ft. Worth. The market value of these hogs at Ft. Worth was $8.95 a hundred. The four dead hogs were weighed in Amarillo. They weighed 925 pounds."

We think this testimony was admissible, and the second assignment is also overruled.

[4] The third assignment is that the court erred in admitting the testimony of the plaintiff with reference to the usual amount of shrink in a run from Pampa to Ft. Worth. It is insisted under this assignment that the witness was not qualified. He testified that he had heretofore engaged in shipping hogs

from Pampa to Ft. Worth and other places; that in a shipment over that distance they naturally suffered a certain amount of shrinkage; that he had made between six and ten shipments previous to the one in question, and based upon his experience he knew the usual and necessary shrinkage of a hog shipped from Pampa to Ft. Worth, over the two lines of railway involved in this suit; that an ordinary 200-pound hog would shrink about 5 pounds. We think this witness was qualified to testify on this point. Appellants' own witness, Curtis, placed the usual amount of shrink at a larger figure.

[5, 6] It is urged by the fourth assignment that the court erred in permitting the plaintiff to testify that the reason he did not properly prepare the cars for shipping was because the railway company did not furnish bedding and proper facilities for doing so, when that issue was not raised by a supplemental petition. Under this assignment it is insisted that the allegations in the answer should have been taken as confessed. It is too late to insist upon such a course in this court. The failure of appellee to answer under oath and controvert the facts alleged by appellants was waived by proceeding to trial in the county court. Memphis Cotton Oil Co. v. Tolbert, 171 S. W. 309. It was the duty of appellant to not only plead that term of the contract requiring plaintiff to feed, water, and care for hogs en route, but their allegation should have shown that adequate facilities were provided, and that the stipulation under the circumstances was reasonable. Having failed to do so, this term of the contract was void. G., C. & S. F. Co. v. Cunningham, 51 Tex. Civ. App. 368, 113 S. W. 767.

[7] Appellants assert that the court erred in permitting the witness Curtis, on cross-examination, to testify that he had made a shipment, had put in a claim for damages for excess in shrinkage and for delay, and that appellants had paid the same. We find no such evidence in the statement of facts, though the bill of exception recites that it was submitted. In a conflict between a bill of exceptions and the statement of facts signed by both parties and duly approved by the court, the latter controls. Coker v. Cooper's Estate, 176 S. W. 145.

[8] It is insisted under the sixth assignment that the court erred in excluding from evidence the written contracts of shipment. Plaintiff's petition seeks to recover upon the common-law liability of the carriers. In their answers they set up that the shipments were made under written contracts. The fifth paragraph, which provides that at his own risk and expense the shipper will load the stock, take care of and attend the same while they are in the stockyards and being loaded, and that the company shall not be liable for any loss or damage while the stock are in the shipper's charge, and so cared for and attended by him, has been declared to be

a void stipulation. P. & N. T. Ry. Co. v. Brooks, 145 S. W. 649.

[9] The fourth paragraph of the shipping contract, which binds the shipper at his own cost to bed the cars, and put them in proper condition for shipment, and inspect and accept them if in good condition, and if not to report the fact to the station agent in writing, and in the event he should fail to do so then that it shall be conclusively presumed that the cars were suitable, has been declared to be a void stipulation. I. & G. N. Ry. Co. v. Parish, 18 Tex. Civ. App. 130, 43 S. W. 1066. The plaintiff testifies without contradiction that the company furnished no facilities for bedding the cars or watering the hogs. The answer does not allege that the appellee was given an opportunity to bed them. In this state of the pleadings, the fourth paragraph of the shipping contract is unquestionably void. G., C. & S. F. Ry. v. Boger, 169 S. W. 1095; Texas Central Ry. Co. v. McCall, 166 S. W. 925; 4 Elliott on R. R. § 1548b.

[10] The fourth paragraph has intermingled with the other provisions a stipulation that the shipper will not hold the company responsible for any damage that may result because of heat, suffocation, or other results of being crowded in the cars, and that any injury or damage to said stock while in transit shall be presumed to have resulted from overloading, for which the company shall in no respect be liable. This stipulation is clearly a violation of the statute (Rev. St. arts. 708 and 710), which forbids a carrier from limiting its liability otherwise than as it exists at common law. Pecos & North Texas Ry. Co. v. Brooks, 145 S. W. 649; I. & G. N. Ry. v. Parish, supra; 4 Elliott on R. R. § 1511.

The fifth paragraph, binding the shipper at his own risk and expense to attend to the stock while in the stockyards of the company awaiting shipment, or while they are being loaded, clearly has no application to the facts of this case.

[11] The eighth paragraph, which appellant attempted to plead, bound the shipper to give notice in writing of claims for damages to some officer of the company or nearest station agent before the stock were removed from the place of destination, and before they were slaughtered or intermingled with other stock, and not to remove the stock from the stockyards until the expiration of three hours after giving of such notice, and further provided that no damages should be recoverable unless a written claim therefor had been presented to the company within 91 days after the damage occurred. The ninth paragraph provides that no suit shall be sustained in any court unless it has been commenced within 6 months after the loss or damage occurred. Article 5713 of Vernon's Sayles' Civil Statutes provides that it shall be unlawful for any corporation to enter into any contract by reason whereof the time in which to sue thereon is limited to a shorter period than 2 years. This article of the statute disposes of the ninth paragraph of the shipping contract.

[12-14] Article 5714 provides that no stipulation in any such contract, requiring notice to be given of any claim for damages as a condition precedent to the right to sue thereon, shall ever be valid unless such a stipulation is reasonable. Appellant failed to allege that the 91-day stipulation was reasonable. It is further provided in said article 5714 that in any suit brought under this and the preceding article it shall be presumed that notice had been given, unless the want of notice is especially pleaded under oath. The appellant in this case did not plead the want of notice under oath, and the presumption that notice was given is conclusive, and any evidence in relation thereto was inadmissible. By reason of the defective pleadings of the appellant, and the fact that the stipulation contained in the fourth and fifth paragraphs of the shipping contract have been declared void, the court did not err in sustaining the appellee's objection and excluding the contract.

The brief of the Southern Kansas Railway Company presents no reversible error.

By reason of the fact that the assignments presented in the brief of the Ft. Worth & Denver City Railway Company raise in several instances the same questions presented in the brief which we have just considered, it will not be necessary to discuss all of the Ft. Worth & Denver City Railway Company's propositions.

[15] It is insisted by this appellant that the court erred in refusing to instruct the jury that if they should find from the evidence that the Ft. Worth & Denver City Railway Company forwarded the car of hogs in question on the first through train from Amarillo to Ft. Worth after the receipt of the shipment from its connecting carrier, and that each of said cars of hogs reached the first market that same could have reached after the time for the departure of this defendant's first train after the receipt of such hogs, to return a verdict for the defendant. This is not a correct charge, because appellee would be entitled to recover if appellant was guilty of negligence, even though the shipments did move to Ft. Worth on the first scheduled train after their arrival in Amarillo K. C., M. & O. Co. of Texas v. Beckham, 152 S. W. 228. The charge would have further been erroneous because delay in transporting the cars was not the only ground upon which recovery was sought. They may have been injured by delays and rough handling at intervening points on the line of this appellant's road. G., C. & S. F. Ry. Co. v. Ideus, 157 S. W. 173.

[16, 17] It is further contended by appellant that because the market price at destination was higher on the day in which the re-

spective shipments arrived at Ft. Worth than it was on the previous day, when they should have reached the market, that the court should have peremptorily directed a verdict for appellants. The effect of this evidence was to deny appellee a right to recover upon his allegation that the market declined during the delay, but in no way affected his right to recover for shrinkage and loss of weight by reason of the delay, and a peremptory instruction should not therefore have been given. The verdict is a general one in favor of appellee for a stated amount against each of the appellants, and we must presume in support of the judgment that no part of the recovery was by reason of a decline in the market.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes